

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1438-12

**JOSE LUIS VEGA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### JOHNSON COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and ALCALA, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

After rejecting his entrapment defense, a jury convicted appellant of three drug offenses. On appeal, he complained that the trial judge reversibly erred by not instructing the jury accurately on his entrapment defense because the application instruction did not list inducement by the confidential informant as well as inducement by an undercover officer. The court of appeals, relying on *Posey v. State*, held that appellant's failure to request that

specific application instruction, or object to its omission, forfeited the issue on appeal.[1]  We

granted review to reiterate that, when a trial judge instructs on a defensive issue, he must do

so correctly;[2] thus any error in the charge actually given is subject to review under *Almanza*.[3]

Here, the judge's failure to list the confidential informant in the application charge was

harmless because the entrapment instructions, taken as a whole, provided the jury with an

adequate vehicle to fully consider and give effect to appellant's entrapment defense.

**I.**

A confidential informant ("Jerry") told Special Crimes Unit Investigator Marshall

Whitlock that appellant was a drug dealer in Tarrant County who could deliver a large

quantity of methamphetamine to Johnson County.  Undercover Officer Whitlock contacted

appellant and arranged to purchase one ounce of methamphetamine from him for $1,400.

They agreed to meet on August 5th at a Waffle House in Johnson County.

Officer Whitlock wore a recording device that captured some video, and all of the

audio, of the drug deal.  Appellant provided the drugs, the pair weighed them, and then

appellant counted the money.  Officer Whitlock asked appellant about the quality of the

---

[1] *Vega v. State*, No. 10–11–00327–CR, 2012 WL 3799176, *1 (Tex. App.—Waco August 30, 2012 ) (not designated for publication).

[2] Appellant's sole ground for review asks
Whether a charge on entrapment that instructed the jury as to the incorrect person inducing appellant to sell drugs was an omission of a defensive issue that required preservation or an "error" reviewable under *Almanza*.

[3] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

drugs, and appellant told him, "In all reality, dude, if there is an issue, let me know and I will fix it." Appellant was relaxed and "talked about his ability to obtain more than what was purchased that day." He offered Officer Whitlock advice on how to "dub" the drugs out, thus cheating the buyer and making more money. Appellant also explained that "I have a real sweet deal going on at Fantasy Ranch where I get to do all the business I want and the managers all look the other way and no one cares." He talked about his desire to cut out the middle-man and bragged about dealing in "meth," "ice," and "coke."

A couple of days after the initial sale, appellant contacted Officer Whitlock, texting, "Were u going to need more ice this week?" Eventually, they made a deal for another ounce of methamphetamine. Just hours before the scheduled August 19th meeting, Officer Whitlock doubled his order to test appellant's connections. Appellant came to the Waffle House with the two ounces, and, as appellant was counting the money, Officer Whitlock asked him about buying a "QP"–a quarter pound. "QP" was the code word for the "bust" team to come in and arrest appellant, which they did. Besides the two ounces, appellant had three plastic bags of marijuana on him and another 1.32 grams of methamphetamine in his car. This "buy-bust" was also recorded.

Appellant admitted delivering the drugs, but he raised the defense of entrapment to the first sale: "Jerry" had induced him to sell drugs. Appellant testified that he and his wife have a critically ill toddler and no health insurance. Appellant earned too much money for the couple to qualify for Medicaid, but too little to afford a policy covering pre-existing

conditions.  The couple split up, so that his wife would qualify for assistance as a single mother.  Appellant also said that he was in danger of losing the salesman job he had held for several years. Depressed and lonely, appellant began going to the Fantasy Ranch–a Tarrant County topless bar–to drink and talk to people.

> A gentleman come by and he talked to me and his name was Jerry, and he was interested in me and he wanted to talk to me, bought me drinks.  And I–he basically befriended me when I didn't have any friends and I was looking to have someone I could really talk to.
> . . .
> He had a lot of money.  He had his wallet and he took out his money and he was like, I want to help you.  And . . . I accepted his help.  I wasn't going to turn it down.  It was money that I needed to put to the side for my daughter.[4]

Appellant testified that "Jerry" gave him $500. When appellant asked him how he kept his wallet full, "Jerry" introduced him to both Dreamer–a dealer–and Officer Whitlock–a "buyer."  Dreamer supplied appellant with the methamphetamine that he sold to Officer Whitlock.  Appellant made $200 for the first delivery,[5] and he was supposed to make $400 for the second delivery.

Appellant testified that the State failed to offer some of the text messages between

---

[4] Appellant admitted that he did not use any of his drug earnings to help with his daughter's medical expenses.

[5] He testified that the $200 fee

> is what I agreed with on Jerry that I would transport it to and make money and Jerry–when he introduced me to Whitlock, told me he . . . didn't want anything else to do with it and that Whitlock would be selling drugs to him in Johnson County and between him and Whitlock, they would split the money, and all I had to do was wait for Jerry to have Whitlock call me.

himself and Officer Whitlock, including "the one where I had Whitlock begging me to come back up there and do a delivery for him." Still, appellant admitted that he initiated the second deal: "I was not induced on the second one . . . I was not forced . . . . They flashed money in front of me and I needed it." He also admitted to selling cocaine and marijuana.

Appellant said that he sold drugs to six or seven people at Fantasy Ranch, beginning toward the end of July before any delivery to Officer Whitlock. He said that "Jerry" suggested the first sale, but his comfort with the drug business quickly grew:

Q      What quantities did you buy from Dreamer? How much meth at a time did you buy from Dreamer?

A      I will buy sevens and half ounces.

Q      Besides meth, what else did you sell?

A      Once again, after I got introduced to it and I figured out there was money to be made, that I could, since he was there to provide other things, I started selling weed as well.

Still, appellant insisted that the dealer persona he presented to Officer Whitlock was an act: "I've been trained my entire life in customer service, and that is just how I react to people. I'm always friendly. I'm always nice. I'm always trying to be helpful to people."

Although the record does not reflect whether appellant requested it, the trial judge included abstract and definitional instructions concerning the defense of entrapment.[6] The

---

[6] Those instructions read:
You are instructed that it is a defense to prosecution that a person engaged in the conduct charged against him because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense; however, conduct of law enforcement agents that merely affords a person an opportunity to commit an offense does not constitute

entrapment application paragraph read as follows:

> Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by Marshall Whitlock, a law enforcement officer, by persuasion or any other means likely to cause persons to do so, and that the conduct of Marshall Whitlock did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty.

Appellant did not object to the entrapment instruction as given by the trial judge. The jury rejected appellant's entrapment defense and convicted him of two counts of delivery of a controlled substance and one count of possession of a controlled substance. He was sentenced to imprisonment for 10 years, 25 years, and 5 years, respectively.

On direct appeal, appellant claimed that "[a] missing instruction on inducement by confidential informants impermissibly narrowed the facts under which the jury could find entrapment, undercutting Appellant's defense and causing egregious harm." Appellant argued that inducement by "Jerry" (as well as Officer Whitlock) should have been included in the application paragraph.[7] The court of appeals held that *Posey v. State*, foreclosed relief:

> In one issue, Vega contends that the jury charge was erroneous because it was

---

entrapment.
      By the term "law enforcement agent" as used herein is meant personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

[7] On direct appeal appellant argued that the "instruction on 'law enforcement agent' only instructed the jury on the undercover officer, Marshall Whitlock. But the jury should have also been instructed that 'Jerry' constituted an agent of law enforcement, and that if the jury finds that 'Jerry' induced Appellant, it should find Appellant not guilty." Appellant filed, as his brief on the merits to this court, the same brief he filed on direct appeal.

missing an instruction on inducement by criminal informants, in other words, entrapment by a confidential informant. Entrapment is a defensive issue. Vega did not request this particular instruction and did not object to its omission in the charge; thus it is not preserved. The principles of *Almanza* do not apply to omissions from the jury charge of defensive issues that have not been properly preserved by a defendant's request or objection. Because Vega's complaint has not been preserved, his sole issue is overruled.[8]

The court acknowledged in a footnote that the jury charge did include an instruction on entrapment by a law-enforcement officer.[9]

Appellant petitioned this Court for review, arguing that the court of appeals should have analyzed the alleged error under *Almanza*.[10] He further argues that the failure to name "Jerry" as a "law enforcement agent" in the application paragraph resulted in egregious harm because it gutted his defensive theory of entrapment.

## II.

The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions."[11] Article 36.14 states that "the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case."[12] The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object

---

[8] *Vega v. State*, 2012 WL 3799176, *1 (citations and footnotes omitted).

[9] *Id.*, n.1.

[10] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

[11] *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

[12] TEX.CODE CRIM. PROC. art. 36.14.

to inclusions or exclusions in the charge.[13]  But Article 36.14 imposes no duty on a trial judge to instruct the jury *sua sponte* on unrequested defensive issues because an unrequested defensive issue is not the law "applicable to the case."[14]  A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint.[15]

However, if the trial judge does charge on a defensive issue (regardless of whether he does so *sua sponte* or upon a party's request), but fails to do so correctly, this is charge error subject to review under *Almanza*.[16]  If there was an objection, reversal is required if the accused suffered "some harm" from the error.[17]  If no proper objection was made at trial, a reversal is required only if the error caused "egregious harm."[18]

## III.

**A.    Entrapment was "law applicable to the case."**

In a short opinion, the court of appeals held that appellant had forfeited his sole issue on appeal under *Posey*.  But this case is not like *Posey*.  Posey had complained on appeal that

---

[13] *Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011).

[14] *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).

[15] *Id.* at 61.

[16] *Barrera v. State*, 982 S.W.2d 415, 416-17 (Tex. Crim. App. 1998) (error to include abstract self-defense instruction in the charge but fail to instruct the jury to acquit if it had a reasonable doubt on self-defense).

[17] *Almanza*, 686 S.W.2d at 171.

[18] *Id.*

the trial judge reversibly erred by not *sua sponte* instructing the jury on the defense of mistake of fact. Posey had not requested this instruction, nor had he objected to its absence in the jury charge, and the trial judge gave no mistake-of-fact instruction whatsoever. There was no error, because mistake of fact had not become "law applicable to the case." But, as we held in *Barrera v. State*, once the jury is charged on a defensive issue, a flaw in that charge is error:

> This case presents a different issue from that in *Posey*, however. Rather than omitting an instruction altogether, the trial court in this case failed to apply an abstract instruction to the facts of the case. That is to say, even without a request, the trial court included the law of self-defense in the charge to the jury. A trial court has no duty to sua sponte charge the jury on unrequested defensive issues raised by the evidence. However, having undertaken on its own to charge the jury on this issue, the trial court in this case signaled that self-defense was "the law applicable to the case." Therefore, any flaw in the charge on self-defense amounts to an error in the charge, even under the reasoning of *Posey*.[19]

In this case, the jury charge contained the correct abstract definition of the entrapment defense, and the correct definition of the term "law enforcement agent."[20] The application paragraph then instructed the jury to find appellant not guilty if it believed that he committed the offense because he was induced to do so by "Marshall Whitlock, a law enforcement officer[.]" The defense of entrapment was "law applicable to the case." Therefore, any

---

[19] *Barrera*, 982 S.W.2d at 416 (citation omitted).

[20] *See supra* note 6.

defect in the charge on entrapment amounts to an error in the charge, even under *Posey*.[21]

The court of appeals, in holding otherwise, read *Posey* too expansively.

**B.     The jury charge erroneously failed to apply the law of entrapment to "Jerry."**

We agree with appellant's argument on direct appeal that the jury should have been instructed to find appellant not guilty if it believed that he was induced to commit the first drug sale either "by Jerry, acting as a law enforcement agent," or by Marshall Whitlock, or by both.[22]     When a definition or instruction on a defensive theory of law—such as entrapment—is given in the abstract portion of the charge, the application paragraph must list the specific conditions under which a jury is authorized to acquit.[23]     Officer Whitlock testified that he learned about appellant through a confidential informant, "Jerry," and that

---

[21] The State argues that, under the doctrine of invited error, appellant is estopped from claiming that the court's charge was erroneous because he received the "exact jury instruction [that] he had requested and had no further objection to it."  State's Brief at 11.  But the State cannot point to any part of the record showing that the instruction given was requested and neither can we.  Under these circumstances, we will not assume appellant got the "exact jury instruction [that] he had requested" and is now trying to "benefit from an error that was committed at his behest." *Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009); *Tucker v. State*, 771 S.W.2d 523, 534 (1988).  It may be that here, as in *Barrera*, the trial judge added the entrapment instruction because he anticipated that appellant would request it.

[22]  The entrapment defense could apply only to the first drug delivery to Marshall Whitlock on August 5th because appellant admitted that he was not "induced" by anyone to make the second drug sale on August 19th, and he was not induced to possess the methamphetamine found in his car after his arrest on August 19th.

[23] *See generally*, *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (application paragraph must specify "all of the conditions to be met before a conviction under such theory is authorized"); *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) (noting that jurors are not authorized to return a verdict "except under those conditions given by the application paragraph of the charge").

"Jerry" worked for the STOP Special Crimes Unit. "Jerry's" status as a "law enforcement agent" as that term is defined in Texas Penal Code § 8.06, was not in dispute.[24] The evidence showed that "Jerry" was an agent acting under the control of law-enforcement officers, and appellant testified that it was "Jerry" who suggested that he deliver drugs to Officer Whitlock. The trial judge erred in failing to list "Jerry" as a person acting as a law-enforcement agent in the entrapment application paragraph.

## C.    Appellant was not harmed by the error in the jury charge.

Appellant did not object to the jury charge at trial, so he must show that he suffered egregious harm from the charge error to be entitled to reversal.[25]  Under *Almanza*, we assess whether the defendant has suffered actual harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[26]  We find the error here "obviously harmless."[27]

---

[24] The State has never suggested that "Jerry" was not a "law enforcement agent" under Tex. Penal Code § 8.06. *See Soto v. State*, 681 S.W.2d 602, 606 (Tex. Crim. App. 1984) (Clinton, J., dissenting) (that Cervantes was a "law enforcement agent" under Tex. Penal Code § 8.06 "is a matter accepted by all parties and the court, and upon that basis the cause was presented and decided."). *See also*, TEXAS CRIMINAL PATTERN JURY CHARGES–DEFENSES, 140 (State Bar of Texas 2010) (setting out a sample charge submitting to the jury the question of whether a private person was acting in accordance with instructions from law-enforcement personnel).

[25] *Almanza*, 686 S.W.2d at 171.

[26] *Vasquez*, 389 S.W.3d at 368-69.

[27] We here exercise our inherent authority to make an initial harm analysis because both parties have fully briefed the issue of harm, and the record clearly demonstrates that the error is

First, the jury charge indirectly covered inducement by "Jerry" because (1) the definition of "law enforcement agent" informed the jury that "Jerry" was "a person acting in accordance with instructions from a law enforcement agent," for purposes of the entrapment defense, and (2) the application charge covered inducement by "Marshall Whitlock, a law enforcement officer, by persuasion *or any other means*," and the jury was free to consider "Jerry" as Officer Whitlock's "means."[28] "Jerry" was, in essence, merely an extension of Officer Whitlock and acted at his behest.

Turning to the second *Almanza* factor–the evidence at trial–appellant testified to initial inducement by "Jerry," and further persuasion by Officer Whitlock. Appellant's sole defensive theory was entrapment, but that defense applied only to one of the three drug charges, and it was a marginal theory at best. As the State points out, the prosecutor "thoroughly impeached appellant's tale of woe on cross-examination,"[29] establishing that: (1) appellant's first drug sale at Fantasy Ranch occurred before his August 5th drug delivery to Officer Whitlock; (2) appellant liked the easy money afforded by the drug trade, and he

---

harmless. *See McDonald v. State*, 179 S.W.3d 571, 580 (Tex. Crim. App. 2005) (Cochran, J., concurring) ("when the record clearly demonstrates that the error is obviously either harmful or harmless . . . the time, money, and effort expended on a remand are not worth the candle of comity and continued litigation").

[28] The State argues that there was no error in the court's charge for these reasons. "Other than Whitlock, the reference to being induced by 'persuasion or by any other means' necessarily includes the confidential informant. Consequently, the jury charge was not erroneous for failing to specifically list 'Jerry, a confidential informant' in the application paragraph." State's Brief at 11-12.

[29] State's Brief at 15.

admitted initiating the second drug delivery to Officer Whitlock; (3) appellant sold a variety of drugs (cocaine, methamphetamine, and marijuana), to numerous people besides Officer Whitlock; and (4) appellant was well versed in the vernacular of the drug trade and had considerable expertise and connections for a person supposedly new to the trade. There was but the barest scintilla of evidence that "Jerry's" friendship and offer of monetary "help" induced an otherwise law-abiding appellant to enter the drug trade.[30] The State's argument that "Jerry's" friendship and gift of $500 merely gave appellant an opportunity to commit an offense has considerable merit.

As for the third *Almanza* factor–the arguments of counsel–neither the State nor the defense suggested that there was any distinction between "Jerry" and Officer Whitlock. The State urged the jury to reject the defense, not because "Jerry" was not a "law enforcement agent," but because appellant was in it for the money. The defense characterized the entrapment as part of a case of overreaching: STOP used a confidential informant, an agent of law enforcement, to lure the vulnerable appellant from Tarrant County to Johnson County–a place to which he had never before been–to make a drug case for Johnson County.

Applying a straightforward *Almanza* analysis, we conclude that appellant's rights were not harmed at all, much less "egregiously harmed," by the failure to specifically name

---

[30] *See England v. State*, 887 S.W.2d 902, 908 (Tex. Crim. App. 1994) (to prevail on entrapment defense, evidence must show that police conduct was such that an ordinary law-abiding person would have been induced to commit the crime); *Martinez v. State*, 802 S.W.2d 334, 337 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (a suggestion by a law-enforcement agent that the defendant sell illegal drugs to make money to pay off debts or avoid financial hardship does not rise to level of entrapment).

"Jerry" in the entrapment application paragraph.

Although the entrapment application paragraph should have listed "Jerry" as well as Marshall Whitlock, the jurors were well aware of "Jerry's" role as a law-enforcement agent acting at Officer Whitlock's behest from (1) the definitional section of the entrapment charge, (2) the evidence, and (3) the parties' arguments. Therefore, while we disagree with the court of appeals that appellant failed to preserve this jury-charge issue, we conclude that appellant has failed to show egregious harm, and we affirm the judgment of the court of appeals.

Delivered: March 20, 2013
Publish