

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00489-CR

Jonathan Paul **FINCHER** a/k/a Jonathan Fincher,
Appellant

v.

The **STATE** of Texas,
Appellee

From the Criminal District Court 1, Tarrant County, Texas
Trial Court No. 1250605D
The Honorable Sharen Wilson, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  September 25, 2013

AFFIRMED

Jonathan Paul Fincher was convicted by a jury of injury to a child.  On appeal, Fincher

contends: (1) the trial court erred in admitting hearsay statements made by a detective while

interviewing Fincher; (2) the evidence is legally insufficient to support the jury's finding that

Fincher acted knowingly; and (3) the jury charge omitted a crucial sentence from the definition of

reckless.  We overrule Fincher's issues and affirm the trial court's judgment.

**BACKGROUND**

Fincher was left to care for his girlfriend's nine-month-old daughter, Serenity. While in Fincher's care, Serenity suffered serious head trauma. Fincher gave several different versions of the events resulting in the injury.

Fincher was indicted for knowingly causing serious bodily injury to a child. At trial, Fincher sought to establish that he acted recklessly, as opposed to knowingly. The jury found Fincher guilty of knowingly causing the injury and assessed his punishment at 15 years' imprisonment and at $10,000 fine.

**HEARSAY**

In his first issue, Fincher contends the trial court erred in admitting hearsay statements made by a detective while interviewing Fincher. The detective interviewed Fincher on three occasions, and the State offered a redacted videotape of the three interviews. Defense counsel objected to the admissibility of hearsay statements made by the detective during the second and third interviews. Specifically, defense counsel objected to the detective's statements referencing: (1) multiple skull fractures because Serenity suffered only one skull fracture; (2) what the police officer or CPS heard from the doctors or medical staff; (3) the need for the police to know the truth regarding what happened to Serenity to assist in her medical treatment; (4) the existence of two kinds of people, and the jury throwing the book at the kind of person that lies; and (5) Serenity's injuries not being accidental.

In his brief, Fincher contends the hearsay statements were not admissible either as adoptive admissions or as non-hearsay statements offered to show their effect on him during the interviews. In its brief, the State does not contend the statements were admissible as adoptive admissions. Instead, the State counters that the statements were not hearsay or, if they were, their admission was harmless.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id*.

"Hearsay" is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Both Fincher and the State rely on *Kirk v. State*, 199 S.W.3d 467 (Tex. App.—Fort Worth 2006, pet. ref'd), to support their positions.

In *Kirk*, the appellant argued statements made by a detective while taking the appellant's statement were inadmissible hearsay, while the State asserted the statements were not hearsay because they were not offered to prove the truth of the matter asserted. 199 S.W.3d at 478. The detective's statements being challenged by the appellant were the following:

> "There is no evidence that exists right now that Landon was involved in this," and "I feel like maybe you've been a little untruthful with me. We went out and we picked up Landon…." … "If we had a person who — if we had a person who was telling me that they saw you walking alone to this house. What would you think about that…. If we had a person that saw you leaving that house with that vehicle what would you think of that?"

*Id*. at 478-79. The Fort Worth court held "the trial court did not abuse its discretion in admitting the statements because they were not offered to prove the truth of the matter asserted." *Id*. at 479. The court then explained the statements were questions that the detective asked the appellant and were admitted to give context to the appellant's replies. *Id*. The court further explained that redacting the detective's statements from the recordings so that the appellant's statements still made sense to the jury would be difficult. *Id*.

Fincher relies on the Fort Worth court's explanation to contend a detective's statements during an interview are non-hearsay only if they are admitted "to give context to Appellant's replies." *Id*. This contention ignores the Fort Worth court's actual holding that the statements

were admissible because they were not offered to prove the truth of the matter asserted; therefore, they did not meet the definition of "hearsay." *Id.* Similarly, the detective's statements in this case were not offered to prove the truth of the matter asserted, but simply as statements made during Fincher's interviews in an effort to ascertain the true cause of Serenity's injuries. Because the detective's statements were not hearsay, the trial court did not abuse is discretion in overruling Fincher's hearsay objection. Fincher's first issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Fincher contends the evidence is insufficient to support the jury's finding that he acted knowingly.

In appeals in criminal cases, the only standard a reviewing court applies in reviewing sufficiency challenges is the *Jackson v. Virginia* legal sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As a reviewing court, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* We also defer to the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Fincher was charged with knowingly causing serious bodily injury to a child. "Injury to a child is result-oriented offense requiring a mental state that relates not to the charged conduct but to the result of the conduct." *Baldwin v. State*, 264 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "A person acts knowingly, or with knowledge, with respect to the result

of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (West 2011).

A factfinder may infer a culpable mental state from the accused's acts, words, and conduct, as well as the surrounding circumstances. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Baldwin*, 264 S.W.3d at 242. "[I]nconsistent statements [] and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara*, 152 S.W.3d at 50. "A reasonable inference also arises in the presence of proof that the defendant tried to conceal the conditions that led to the victim's injuries." *Baldwin*, 264 S.W.3d at 242. A culpable mental state also can be "inferred from the extent of the [victim's] injuries and the relative size and strength of the parties." *Patrick v. State*, 906 S.W.3d 481, 487 (Tex. Crim. App. 1995).

In this case, the jury heard Fincher provide several different versions of the events that resulted in Serenity's injuries, including his testimony at trial that he stood four or five feet away from a partially-deflated air mattress and tossed Serenity eight to nine feet into the air and onto the air mattress. In response to the prosecutor's question about whether Fincher knew he could cause serious bodily injury by tossing a child in that manner on a deflated mattress, Fincher responded, "Yes." In another version of the events, Fincher told a CPS investigator that he was upset at a noise made by his dogs and he threw Serenity aggressively and violently toward the air mattress, but her head hit the concrete floor.[1] Finally, the jury heard the detective's testimony that Fincher returned after one interview and asked him what would happen if he did punch or hit Serenity but could not remember.

The jury also heard testimony from David Donahue, M.D., the pediatric neurosurgeon who treated Serenity, regarding the extent of Serenity's head injuries and the force that would be

---

[1] The room was a converted garage.

necessary to cause those injuries. Serenity had sustained at least one skull fracture with bleeding under and within the scalp. The damage to Serenity's brain caused it to protrude outside the scalp. In response to whether Serenity's injury was a type of fracture that would result from an unintentional accident, Dr. Donahue responded only if she fell out of a second or third-story window or had her head caught in an elevator door, but not from falling off a bed unless the bed was twenty to fifty feet off the ground. Dr. Donahue stated the injuries could not have been caused by Serenity falling in her crib or playpen. Dr. Donahue also stated the injuries could not have resulted from throwing Serenity onto an air mattress unless the mattress was two or three stories below and deflated. Dr. Donahue further stated the injuries could not have been caused by carrying Serenity by her head or by Serenity falling onto a concrete floor. On the other hand, Dr. Donahue testified Serenity's injuries could have been caused by grabbing Serenity by her feet and hitting her against a wall, by a strong person squeezing her head very tightly, or by placing her on the ground and stomping on her head. Dr. Donahue also stated that Serenity's injuries could have been caused by someone's hands if the person was very strong or very angry. Dr. Donahue's testimony made Fincher's various versions of the events implausible, with the possible exception of his having aggressively and violently thrown Serenity to the ground.

From the forgoing evidence, the jury could reasonably infer that Fincher was aware that his conduct was reasonably certain to cause serious bodily injury to Serenity. Fincher's second issue is overruled.

### JURY CHARGE

In his final issue, Fincher contends he suffered egregious harm because the jury charge omitted a crucial sentence from the definition of reckless. Section 6.03(c) of the Texas Penal Code states as follows:

> A person acts recklessly, or is reckless, with respect to … the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the … result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (West 2011). The jury charge in the instant case omitted the second sentence of the statutory definition. Because defense counsel did not object to the charge, Fincher is required to show that he suffered egregious harm as a result of the omission. *Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013). "Harm is egregious if it deprives the appellant of a 'fair and impartial trial.'" *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

The jury in the underlying cause was properly charged on the offense of knowingly causing injury to a child, and the jury found Fincher guilty of that offense. Fincher's "conviction for the greater inclusive offense nullifies any possible harm that might have derived from the defective lesser included offense instruction." *Saunders v. State*, 913 S.W.3d 564, 569 (Tex. Crim. App. 1995). In fact, the jury charge in this case conditioned the jury's consideration of the offense of reckless injury to a child as follows:

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to unanimously agree, you will find the defendant not guilty of knowing injury to a child as charged in the indictment and next consider whether the defendant is guilty of the lesser included offense of reckless injury to a child.

We presume the jury followed the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). In this case, because the jury found Fincher guilty of knowing injury to a child, the jury never considered the trial court's instructions with regard to reckless injury to the child. Because Fincher did not suffer egregious harm based on the jury charge's omission of a portion of the statutory definition of reckless, Fincher's third issue is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH