**Affirmed and Opinion Filed January 9, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01126-CR

### FRANCISCO HERNANDEZ GODINEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 382nd Judicial District Court
### Rockwall County, Texas
### Trial Court Cause No. 2-12-592

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

A jury convicted appellant Francisco Hernandez Godinez for aggravated assault with a deadly weapon and sentenced him to twelve years' imprisonment. On appeal, he argues the evidence is legally insufficient to support his conviction because the State failed to prove the deadly weapon element of the offense, and the trial court erred by omitting defensive issues in the jury charge of a "fundamental nature." We affirm the trial court's judgment.

### Background

On the evening of October 5, 2012, Mary Jane Ramirez and Erica Jaimes left Erica's home and walked back towards Mary Jane's home. Francisco and his brother Salvador lived a few trailers down from Mary Jane and were outside at the time. As the two teenaged-girls walked closer to Francisco's trailer, the two men started whistling and saying inappropriate

things to them. Mary Jane described it as a "nasty whistle" and that she was scared because she did not know "what was gonna happen." The girls ignored the men and kept walking.

After they arrived at Mary Jane's home, Mary Jane asked her father for money and for permission to walk back to the Harbor, a shopping area in Rockwall. She also asked her brother Robert to walk back with them in case the men were still outside. Robert obliged and walked behind the girls.

When they approached the trailer again, the two men were still outside. They began whistling and saying inappropriate things to the girls. Erica testified Robert nicely asked the men to stop, but they did not "so they started an argument with him." The girls then kept walking, and Mary Jane testified she did not see what happened next between the men.

Robert testified the man wearing a white shirt, identified as Francisco, gestured for the girls to come over. Robert then asked the man wearing the red shirt, identified as Salvador, to tell Francisco to stop whistling at the girls, but Salvador said no. Robert testified Salvador then hit him twice, and as he was trying to get up, he saw Francisco coming out of the trailer with nunchucks. Francisco then repeatedly hit him on the head with the nunchucks. Robert described getting hit "everywhere . . . probably about 20 or 30 times." He thought he was going to die. He "blanked out for a minute" before calling the police. Robert said the two men ran into the house when they heard the police sirens. He also testified that a man, wearing a beige shirt, ran off with the weapons.[1]

During the attack, Robert called his father, Robert, Sr. ("Senior"), who immediately drove down the street in his truck. Senior testified it was no more than five minutes after Robert and the girls left, that he drove down. The men were already fighting when he arrived, and he saw Robert being assaulted. He tried to calm everyone down, but it did not work. Francisco

---

[1] The weapons were never found.

then came out with the nunchucks. The four men then struggled over the nunchucks. Senior testified he saw Salvador reach for something, later identified as a rod, from the bed of a truck. Senior shifted his attention to Salvador, who then hit him in the arm, the ribs, and across the back. While Senior did not appear to have external injuries, he later collapsed at the scene and was taken to a hospital where it was determined his spleen had ruptured.

Jose Rodriguez, who worked with the brothers, was also present that night. He arrived about the same time Robert approached Salvador. Jose claimed he tried to diffuse the situation, and things calmed down until Senior drove up in a white truck. He said, "they started beating each other up," but he was between the two trucks and first claimed did not see who started the fight. He later testified Robert hit Salvador first; however, he did not include that in his police statement. When Jose tried to leave, Senior told him to stay because he was a witness. Jose admitted that while he saw Senior holding a strap, he never saw Senior hit anyone with it. Similarly, Robert and Senior testified Senior did not threaten anyone with the strap.

Officer Toby Bowen arrived on the scene to see Robert walking towards him, covered in blood, and pointing towards the brothers' trailer. As Officer Bowen got closer, he saw blood coming from a large wound in the back of Robert's head. He described a "large goose egg" on his forehead and a cut on his cheek. He also observed a rug burn type injury on Robert's knees from being dragged across the ground.

Officer Bowen testified he was familiar with nunchucks, and a person struck in the head with nunchucks could experience serious bodily injury or death. Based on his experience, he testified Robert's injuries could be consistent with being hit with nunchucks.

Officer Bowen testified that based on his investigation, he did not believe any part of the altercation had taken place inside the trailer. However, Officer Donald Burns interviewed Francisco, and he told a different story.

According to Francisco, some unidentified men entered the trailer and began assaulting him. He claimed he was punched several times in the head and forced the men out of the residence. He claimed the police then showed up, and he had "no idea what the following was."

Robert denied doing anything to start the fight. He also denied going onto the front porch or into the trailer. He admitted, however, that he walked from the street onto the "grassy part of the driveway" on their property. He admitted to drinking alcohol that night, but when asked if he was intoxicated, he said, "Not really. Kind of."

Like Robert, Senior denied walking onto the porch or entering the trailer. He also admitted to drinking that night, and a medical report from the hospital indicated he was intoxicated.

The State charged Francisco with aggravated assault with a deadly weapon. At the end of the trial, the jury was instructed on the law of self-defense, defense of a third person, and defense of property. The jury convicted Francisco of aggravated assault with a deadly weapon and sentenced him to twelve years' confinement.[2] This appeal followed.

## Legal Sufficiency of the Evidence

In his first issue, Francisco argues the evidence is legally insufficient to support his conviction because the State failed to prove that nunchucks are a deadly weapon. He specifically argues the evidence does not show how nunchucks are a deadly weapon, and Officer Bowen's testimony was "unusually weak" on the issue. While Francisco admits injuries may be some evidence to support use of a deadly weapon, he claims the injuries in this case negate any intent to inflict death or serious bodily injury with the nunchucks because Robert (1) first refused

---

[2] During punishment, Francisco stipulated to the followings: (1) a June 2, 2004 conviction for unlawful carrying of a weapon (nunchucks) and driving while intoxicated; (2) a June 10, 2005 conviction for driving while intoxicated and failure to identify giving false or fictitious information; and (3) a November 19, 2010 conviction for reckless driving.

medical treatment, (2) called the police on his cell phone, and (3) left the hospital less than three hours after his admission. We disagree with Francisco's characterization of the evidence.

The standard for determining whether the evidence is legally sufficient to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). The jury is the exclusive judge of witness credibility and the weight to be given testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc). It is also within the exclusive province of the jury to reconcile conflicts in the evidence. *Id.*

A person commits the offense of aggravated assault with a deadly weapon if the person commits assault as defined in section 22.01 of the penal code by intentionally, knowingly, or recklessly causing bodily injury to another and exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2005). "Deadly weapon" is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(A), (B).

Because nunchucks are not a deadly weapon per se, we must consider whether Francisco used them in a manner intended or capable of causing death or serious bodily injury. To determine whether a particular object is "capable of causing death or serious bodily injury," we look to the facts as they actually existed at the time of the offense. *Drichas v. State*, 175 S.W.3d 785, 798 (Tex. Crim. App. 2005) (en banc). Subsection B's plain language does not require that the actor actually intend death or serious injury, but rather that the object is "capable" of

threatening deadly force, even if the actor has no intention of actually using deadly force. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

While Francisco argues the State needed to provide evidence that he was qualified or trained to use "such a special weapon" before it could decide whether nunchucks are a deadly weapon, we do not agree. In determining whether an object is a deadly weapon, courts have determined a jury may consider all facts, including (1) the physical proximity between the victim and the object, (2) the threats or words used by the defendant, (3) the size and shape of the weapon, (4) the weapon's ability to inflict death or serious injury, and (5) the manner in which the defendant used the weapon. *Adame v. State*, 69 S.W.3d 581, 583 (Tex. Crim. App. 2002) (Meyer, J., concurring); *Wilson v. State* 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.); *Roe v. State*, No. 02-13-00217-CR, 2014 WL 584898, at *2 (Tex. App.—Fort Worth Feb. 13, 2014, no pet.) (mem. op., not designated for publication). No one factor is determinative. *Wilson*, 391 S.W.3d at 137. With this in mind, we consider the evidence in the light most favorable to the prosecution.

Officer Bowen testified he had worked some violent assaults and was familiar with weapons and how they can be used. He had experience with nunchucks, having seen them in person and having held them. He opined a person struck in the head with them could suffer serious bodily injury or death.

Robert testified Francisco went into the trailer to retrieve the nunchucks after the altercation ensued. Based on Robert's injuries, the two men were in close proximity during the attack. Robert testified Francisco repeatedly hit him on the head with the nunchucks. Robert described getting hit "everywhere . . . probably about 20 or 30 times." He thought he was going to die. *See Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd) ("A person who receives injuries is qualified to express an opinion as to the severity of those

–6–

injuries."); *see also Cunningham v. State*, No. 08-03-00363-CR, 2004 WL 3017680, at *3 (Tex. App.—El Paso Dec. 16, 2004, pet. dism'd) (mem. op., not designated for publication) (citing *Coshatt*). He "blanked out for a minute" before calling the police.

The fact Robert initially refused medical treatment and was discharged from the hospital after less than three hours is of no consequence in determining whether the nunchucks were used as a deadly weapon. Rather, the evidence showed Robert received numerous blows to the head that caused severe bleeding and required thirteen staples. The jury saw first-hand the permanent scarring on his head. Thus, the evidence shows Francisco used the nunchucks in a manner capable of causing death or serious injury. Accordingly, we conclude the evidence is legally sufficient to support the deadly weapon element of Francisco's aggravated assault conviction. We overrule his first issue.

## Jury Charge Omissions

In his second issue, Francisco argues the trial court erred by failing to include jury instructions on the duty to retreat, multiple assailant self-defense, and apparent danger. The State responds his issues are not preserved. Alternatively, the State argues he was not entitled to the instructions; therefore, the trial court did not err by failing to include them.

The first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). Then, if we find error, we analyze that error for harm. *Id*.

Francisco's claim fails under the first step. The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). The code of criminal procedure requires the trial judge to deliver to the jury "except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West

2007). The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions from the charge. *Vega*, 394 S.W.3d at 519. However, article 36.14 imposes no duty on a trial judge to instruct the jury sua sponte on unrequested defensive issues because an unrequested defensive issue is not the law "applicable to the case." *Id*.; *see also Dillard v. State*, No. 05-13-00494-CR, 2014 WL 2743194, at *3 (Tex. App.—Dallas June 16, 2014, no pet.) (mem. op., not designated for publication). A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection. *Vega*, 394 S.W.3d at 519. Such failure results in a procedural default of any complaint. *Id*.; *see also Dillard*, 2014 WL 2743194, at *3.

The record reflects defense counsel stated he had "no objection for defendant Godinez, Your Honor." There is nothing in the record indicating he proffered a jury change containing an instruction for duty to retreat, multiple assailant self-defense, and apparent danger. Because these are defensive issues and he failed to request them, the trial court had no sua sponte duty to include them in the charge as they were not "law applicable to the case." *Vega*, 394 S.W.3d at 519; *Dillard*, 2014 WL 2743194, at *3; *see also Obregon v. State*, No. 13-11-00185-CR, 2013 WL 4769381, at *5 (Tex. App.—Corpus Christi Sept. 5, 2013, no pet.) (mem. op., not designated for publication) (defendant procedurally defaulted any complaint about court's failure to include a defensive instruction about self-defense against multiple assailants by failing to object to charge or request such an instruction). Consequently, we decide Francisco's second issue against him.

## Conclusion

Having overruled both issues, we affirm the trial court's judgment.

/David L. Bridges/

Do Not Publish
TEX. R. APP. P. 47
131126F.U05

DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FRANCISCO HERNANDEZ GODINEZ,
Appellant

No. 05-13-01126-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 2-12-592.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 9, 2015.