# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00463-CR

---

**Eric Lon Jones, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 22-0866-K26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

---

### O P I N I O N

A jury found appellant Eric Lon Jones guilty of delivery of a controlled substance—methamphetamine—in an amount greater than four grams but fewer than 200 grams and assessed his punishment at forty-five years' confinement and a $10,000 fine. *See* Tex. Health & Safety Code §§ 481.102(6), .112(a), (d). The trial court sentenced Jones in accordance with the jury's verdict. In a single issue on appeal, Jones contends that the trial court committed jury-charge error by failing to (1) include a venue instruction under article 13.04 of the Code of Criminal Procedure and (2) define "preponderance of the evidence" as used in the court's venue instruction. *See* Tex. Code Crim. Proc. art. 13.04, *repealed by* Act of June 12, 2023, 88th Leg., R.S., ch. 765, § 3.001(6), 2023 Tex. Gen. Laws 1837, 1974 (current version at Tex. Code Crim. Proc. art. 13A.053).[1] We

---

[1] Effective January 1, 2025, after Jones's trial, the Legislature repealed chapter 13 of the Code of Criminal Procedure and, with minor substantive changes, moved the venue statutes to

conclude that the trial court's charge was not erroneous and affirm the trial court's nunc pro tunc judgment of conviction.[2]

## BACKGROUND

The indictment in this case arose from a controlled drug buy involving an undercover officer with the Texas Department of Public Safety (DPS). The controlled buy took place inside an undercover police vehicle in the parking lot of a Target near the boundary between Travis County and Williamson County. The State's witnesses included Tyler Watson, the now-retired undercover officer; DPS Lieutenant Ricardo Soforo, who participated in the operation and observed the controlled buy from a distance; and Kiersten Drake, a DPS seized-drug analyst. Jones did not call any witnesses during his case-in-chief. The State's exhibits included photographs of the controlled buy, a recording of a phone call between Watson and Jones, and images from Google Maps—including both a road map and a satellite view—of the area in which the buy occurred; a line depicting the counties' border was overlaid on both images.

---

their current location in chapter 13A. Unless otherwise indicated, we refer to the statutory versions in effect before these changes.

[2] The trial court issued a nunc pro tunc judgment on July 19, 2024, in which it deleted an assessment of $475 in court costs.



Shown the road map, Watson testified that "south of that red line would be Travis County. North of that dotted line would be Williamson County." He agreed that he had parked the undercover vehicle in the "Williamson County area of th[e] parking lot" and explained, "There is a lot that goes into the planning and where the . . . undercover officer is going to park, and we

---

**3** We have excised the central portion of the satellite-view image of the parking lot in which the controlled buy occurred. At the top-left of the image is a Navy Federal Credit Union bank branch. The Target is visible on the image's far right.

3

planned to park within those lines. Yes. We looked at a map similar to that." In his phone conversation with Jones, which was recorded just before the controlled buy, Watson told Jones that he was parked "kind of towards the bank," in apparent reference to the Navy Federal Credit Union at the top-left of the above image.

On cross-examination, Watson confirmed that it was "a conscious decision" to arrange the controlled buy in Williamson County, testifying "I know it's Williamson County, and I know that's where we planned to have the buy at." Asked about Williamson County's reputation for "tougher sanctions" and "tougher punishments for this type of crime than Travis County," Watson testified:

> I know where you're trying to get to with Travis County and Williamson County . . . . I think that there is a reputation out there that there is harsher punishment, maybe, in Williamson County. I don't know. That's a reputation that I've heard on the street . . . . I've heard that Williamson County is tougher on crime than other counties and—but that's the reputation that I've heard.

Lieutenant Soforo likewise testified about the location of the controlled buy, which he estimated was "two or three parking lot spaces into Wilco [Williamson County]" and "sort of in this area just to the north of the red line," which demarcated the border between Williamson County (north) and Travis County (south). The lines on both maps were "true and correct approximation[s] of the difference between Travis and Williamson Count[ies]." Although Lieutenant Soforo, who was in a vehicle "in the Target parking lot but a little bit more south," could not remember which county he had been in, he testified that Watson had been in Williamson County, a determination Lieutenant Soforo was able to confirm in part from looking at the photographs admitted into evidence.

4

Like Watson, Lieutenant Soforo agreed that the decision to hold the controlled buy in Williamson County had been intentional, testifying, "So we were working with Round Rock [Police Department], so they're very familiar with the county lines. And so we looked at the map, and we confirmed that that was Williamson County." He also agreed that the decision was "important for a number of reasons," including to ensure that charges were filed in the proper county.

In language tracking article 13.17 of the Code of Criminal Procedure, the guilt-innocence jury charge included the following instruction regarding venue:

> You are instructed that the indictment may allege the offense was committed in the county where the prosecution is carried on. To sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue.

The jury was instructed that it must find Jones guilty if it found beyond a reasonable doubt "that in Williamson County, Texas, on or about the 1st day of April 2022, [he], did then and there knowingly deliver, by actual transfer, to SA [Special Agent] Watson, a controlled substance, namely, methamphetamine, in an amount of four grams or more but less than 200 grams."

**DISCUSSION**

## I.   Standard of Review

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to

5

inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). The trial court is "'ultimately responsible for the accuracy of the jury charge and accompanying instructions.'" *Mendez*, 545 S.W.3d at 552 (quoting *Delgado*, 235 S.W.3d at 249).

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). If there is no charge error, we need not conduct a harm analysis. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) (plurality op.).

## II.     Article 13.04 Venue Instruction

Jones first contends that the trial court erred by failing "to include [an article] 13.04 instruction as part of its venue instruction." He argues that because the evidence "did not sufficiently establish that the offense occurred more than four hundred yards into Williamson County," an article 13.04 instruction was necessary "for the jury to be authorized to find the [S]tate proved venue by a preponderance of the evidence."

"Venue means the place where the case may be tried." *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd). Because it is not a "criminative fact" or element of any offense, venue need be proved by the State only by a preponderance of the evidence and not beyond a reasonable doubt. *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). At the time of Jones's trial, venue was governed by chapter 13 of the Code of Criminal Procedure. The general rule provided that "[i]f venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed." Tex. Code Crim. Proc. art. 13.18; *cf. id.* art. 13.17. However, the Legislature has enacted special venue statutes,

6

which "as a general matter, exist to 'expand the number of counties in which an offense may be prosecuted' rather than restricting them." *Schmutz*, 440 S.W.3d at 41 (quoting *Soliz v. State*, 97 S.W.3d 137, 141 (Tex. Crim. App. 2003)). Some of the special venue statutes expressly apply to identifiable penal code offenses; others—such as article 13.04—apply by virtue of the particular facts of the case. *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). Although "a special venue provision will control over a general venue statute," *Trees v. State*, 152 S.W.2d 361, 362 (Tex. Crim. App. 1941), the general venue statute is proper when there is no special venue statute applicable to the charged offense, *Schemm v. State*, 228 S.W.3d 844, 845 (Tex. App.—Austin 2007, pet. ref'd).

Article 13.04 provided in relevant part that "[a]n offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties." Tex. Code Crim. Proc. art. 13.04; *see id.* art. 21.06 ("When the offense may be prosecuted in either of two or more counties, the indictment may allege the offense to have been committed in the county where the same is prosecuted, or in any county or place where the offense was actually committed.").

The question before us is whether article 13.04 was part of the law applicable to the case, such that the trial court erred by not sua sponte instructing the jury about the provision. *See id.* art. 36.14; *Vega*, 394 S.W.3d at 519. The Court of Criminal Appeals has defined "the law applicable to the case" as an instruction *required* by a rule or statute under the particular circumstances of a case. *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). "Such statutes and rules set out an implicit 'If-then' proposition: If the evidence raises an issue of [voluntariness, accomplice witness, confidential informant, etc.], then the trial court shall instruct the jury that [whatever the statute or rule requires]." *Id.* (brackets in original).

7

We conclude that article 13.04 was not law applicable to this case. An article 13.04 instruction is not logically required when a charge is brought in the county in which an offense was alleged to have occurred, and—as here—the evidence at trial that the offense occurred in the county of prosecution is uncontroverted. The Court of Criminal Appeals has implicitly recognized as much by explaining—in reference to a statutory predecessor of article 13.04—that the statute merely provided the State with the option to bring the prosecution in either county and that the State did not "exercise that option" unless the indictment showed "that the offense was committed in one county and the prosecution conducted in another." *Parr v. State*, 299 S.W.2d 940, 941 (Tex. Crim. App. 1957). If an offense occurs within 400 yards of two or more counties, and the trial is held in the same county as that in which the offense occurred, there is no need for an instruction at variance with the general rule, and an article 13.04 instruction is both superfluous and potentially confusing to jurors. *See Meraz v. State*, 415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, pet. ref'd) (recognizing that "the State may always allege that the offense was committed in the county where the prosecution is carried on"). Simply put, because the offense and prosecution in this case undisputedly occurred in the same county, article 13.04 was not law applicable to the case, and the trial court was not required sua sponte to issue an instruction regarding the statute; consequently, the instruction's omission was not error. *See* Tex. Code Crim. Proc. art. 36.14; *Mendez*, 545 S.W.3d at 552; *Vega*, 394 S.W.3d at 519.

### III. "Preponderance of the Evidence" Definition

Jones next contends that the trial court erred by failing to define "preponderance of the evidence" in its charge. Specifically, he argues that the standard has a known and established

8

legal meaning and therefore falls within the exception to the general prohibition against defining in a jury charge words that the Legislature has left undefined in statute.

As noted above, the trial court gave an instruction tracking the language of article 13.17, which in relevant part required that "[t]o sustain the allegation of venue, it shall only be necessary to prove by a preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." Tex. Code Crim. Proc. art. 13.17. "All words, phrases and terms" used in the Code of Criminal Procedure "are to be taken and understood in their usual acceptation in common language, except where specially defined." *Id.* art. 3.01; *cf.* Tex. Gov't Code § 311.011 (providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage" but that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"). The term "preponderance of the evidence" is defined in neither the Code of Criminal Procedure nor the Texas Penal Code.

On one hand, definitions for terms that are not statutorily defined are not considered to be the "applicable law" under article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015); *see Celis*, 416 S.W.3d at 433 ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge."); *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007) ("Normally, if the instruction is not derived from the code, it is not 'applicable law.'"). Consistent with article 36.14's terms, "jurors should be permitted to 'freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.'" *Green*, 476 S.W.3d at 445 (quoting *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (brackets in original)).

9

On the other hand, an exception to the general rule that it is impermissible to give instructions on the meanings of terms that are not statutorily defined exists for "'terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning.'" *Kirsch*, 357 S.W.3d at 650 (quoting *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)). "Such terms are 'considered as having been used in their technical sense,' and, therefore, it is not error for the trial court to include in its instructions 'a precise, uniform definition' to guide the jury's deliberations." *Green*, 476 S.W.3d at 445. The need to define terms that have a technical legal meaning is particularly acute when "there is a risk that the jurors may arbitrarily apply their own personal definitions of the term or where a definition of the term is required to assure a fair understanding of the evidence." *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003).

We have not found—and Jones has not provided—authority holding that a trial court errs by failing to define "preponderance of the evidence" in a criminal jury charge. *See Campbell v. State*, 125 S.W.3d 1, 10–11 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (emphasizing that appellant "does not cite any rules or cases requiring that his proposed definition of preponderance be given in the charge, and our research has discovered none"). It is important to distinguish this absence of authority from the existence of authorities—which Jones provides—concluding that a trial court does not err when it opts to provide such a definition. *See Green*, 476 S.W.3d at 445 (concluding that "it is not error" to define terms with "a known and established legal meaning"). In particular, he directs us to *McGee v. State*, in which the Court of Criminal Appeals held only that a charge paragraph defining "preponderance of the evidence" was not subject to the objections raised in the appellant's bill of exceptions but in dicta stated that "it was proper" to define the term, which had been used in the charge's preceding paragraph. *See*

10

238 S.W.2d 707, 716 (Tex. Crim. App. 1950), *superseded by statute on other grounds as recognized by Manning v. State*, 730 S.W.2d 744, 748–49 (Tex. Crim. App. 1987).[4] *Cf. Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (overruling requirement that trial courts instruct juries on definition of "beyond a reasonable doubt" and finding that "the better practice is to give no definition of reasonable doubt at all to the jury").

Moreover, we are unpersuaded that "preponderance of the evidence" has acquired a technical legal meaning that is distinct from its meaning in common parlance. Jones posits that the term means "the greater weight of credible evidence presented" or that a fact "is more likely true than not true." Yet this is precisely the term's usual acceptation in common language, as illustrated by the dictionary definitions of the term's constituent words. *See Ex parte Medellin*, 223 S.W.3d 315, 349 (Tex. Crim. App. 2006) (explaining that to discern word's "usual acceptation . . . in common language or how it is construed according to the rules of common usage, we look to dictionary definitions"), *aff'd sub nom. Medellin v. Texas*, 552 U.S. 491 (2008). "Preponderance" means a "majority" or "a superiority in weight, power, importance, or strength." *Preponderance*, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/preponderance (last accessed Apr. 21, 2026);

---

[4] We do not read *McGee* to signify that the definition was required and that the trial court would have erred by omitting it. Similarly, Jones references the Criminal Pattern Jury Charges, in a comment to which the committee noted that "[t]he court of criminal appeals has not determined whether 'preponderance of the evidence' qualifies under" the technical-meaning exception, suggested that a definition "may be of appreciable help to jurors," and concluded that "it would not be error to define the term for jurors," but stopped short of declaring that the definition's omission would constitute error. *See, e.g.*, Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: General Defenses* CPCJ 8.14 (2024); *see also Mayo v. State*, 321 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (finding that inclusion of definition for preponderance of evidence was "appropriate for a jury charge").

*see Preponderance*, Cambridge Dictionary, available at https://dictionary.cambridge.org/dictionary/english/preponderance (last accessed Apr. 21, 2026) ("the largest part or greatest amount").

Our sister court has considered the term's meaning and agrees that understanding the term "preponderance of the evidence" does not pose any particular challenge for jurors. *See Campbell*, 125 S.W.3d at 11 (determining that definition of "preponderance of the evidence" was unnecessary because trial court's definition of "clear and convincing evidence" directed jurors to examine "credible evidence" and "the term 'preponderance' in general usage sufficiently denotes the remainder of Campbell's requested instruction").

Accordingly, because of the absence of authority to the contrary, because "preponderance of the evidence" "may be interpreted according to its common usage," and because there is nothing in the record or in caselaw to suggest "a risk exists that jurors may arbitrarily apply an inaccurate definition to the term" or that "an express definition is required to assure a fair understanding of the evidence," we conclude that the trial court did not err by not sua sponte defining the term in this case. *See Kirsch*, 357 S.W.3d at 650; *see also Mendez*, 545 S.W.3d at 552; *Vega*, 394 S.W.3d at 519.

We overrule Jones's sole issue on appeal.

## CONCLUSION

Having overruled Jones's only issue on appeal, we affirm the trial court's nunc pro tunc judgment of conviction.

12

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   April 24, 2026

Publish