**Opinion issued January 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-01016-CR

———————————

## GERARDO TAPIA-LOPEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1399329**

---

## MEMORANDUM OPINION

A jury found appellant, Gerardo Tapia-Lopez, guilty of the offense of possession with intent to deliver a controlled substance weighing at least 400

grams,[1] and it assessed his punishment at confinement for twenty-three years and a fine of $1.00. In his sole issue, appellant contends that the trial court, in its charge, erred in instructing the jury on his affirmative defense of duress.

We affirm.

## Background

Houston Police Department ("HPD") Sergeant B. Roberts testified that on August 16, 2012, while supervising a "street-level narcotics unit," he received information about an individual engaging in "narcotics trafficking" at an apartment complex in Houston. HPD Officer M. Zamora testified that on August 16, 2012, while conducting surveillance at the complex, he saw appellant entering several apartments to clean carpeting. Zamora noted that the front door to each apartment that appellant accessed was already unlocked, except for apartment 1303, which appellant accessed with a key and then locked each time he left. At one point, two men arrived, and appellant went with them into apartment 1303. After a few minutes, the men left. Appellant then came out and got into a van, which he merely moved to a different parking space.

Later that afternoon, Officer Zamora saw appellant go to the back of the van, remove a bucket, which appeared to be empty, and carry it into apartment 1303. After approximately five minutes, appellant came out with the bucket, which

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a) (Vernon 2010).

appeared to be "weighted down," and got into the back of the van for "maybe a minute." Appellant then got out of the van without the bucket, got into a blue sedan, and left the complex.

Officer Zamora further testified that a canine unit was called in to check the van, and the dog alerted to the smell of narcotics coming from inside of it. Another officer conducted a traffic stop of appellant in the blue sedan, and the officer brought him back to the apartment complex. Appellant then admitted that he owned the van, and he gave Zamora his keys and permission to conduct a search. During his search of the van, Zamora saw that the bucket that he had previously seen appellant carrying contained "packages that appeared to be brick-shaped, which [he] knew from experience contain[ed] narcotics." The packages were later identified as "4 kilos" of crystal methamphetamine. Zamora opined that the amount seized was "equivalent to over 40,000 servings" and had a "street" value of "over a half million dollars." He noted that such an amount would typically be possessed by a "wholesaler," i.e., someone who sells to dealers. And Zamora's subsequent search of apartment 1303 revealed, in a kitchen cabinet, bowls, which contained "methamphetamine oil," and "bags," which contained small amounts of narcotics and are "commonly used to show samples of the product." Zamora explained that "most" "crystal meth[amphetamine] comes from Mexico" and is brought into the United States in oil or powder form, then

3

"cook[ed]" into crystallized form. Houston Forensic Science Center criminalist A. Barker testified that the substances seized from appellant weighed 4,295.3 grams and tested positive for methamphetamine.

Appellant testified that he did in fact possess over 400 grams of methamphetamine on August 16, 2012. He asserted, however, that he did so under duress. Appellant explained that on the day of the offense, he received a telephone call from Miguel Zuniga, who wanted to know where appellant was working and told him that someone would be delivering "something" to him. Thirty minutes later, a man delivered "four squares" to appellant, who did not know what the packages contained. He just put them in the van. Appellant noted that Zuniga had "threatened" him, and he felt that if he had refused, it would have resulted in his death or the deaths of his family members.

Appellant further explained that his parents, brother, and sister live in Michoacan, Mexico. Zuniga also lived in Mexico, was involved in the narcotics trade, and knew where appellant's family lived. And Zuniga was "upset" because appellant's sister had just ended their engagement to marry. Appellant further testified generally about the dangers of narcotics cartels in the area, noting that "[t]here were frequently things on the news" and, in some cities, narcotics cartels "kill [people], cut off their heads, they just shoot them." If someone refuses to help a member of a cartel, "they kill them."

4

The trial court, sua sponte, included in its charge to the jury an instruction on the affirmative defense of duress, as follows:

> [I]f you find from the evidence beyond a reasonable doubt that the defendant, Gerardo Tapia-Lopez, did commit the offense of possession with intent to deliver a controlled substance, namely, methamphetamine, weighing at least 400 grams by aggregate weight, including any adulterants or dilutants, as alleged in the indictment, but you further find by a preponderance of the evidence that *Miguel Zuniga* had threatened to kill or cause serious bodily injury to the defendant or another if he did not participate in said offense, and that the force or threats of force were such as would render a person of reasonable firmness incapable of resisting the pressure, and that the defendant was in fear of imminent loss of life or serious bodily injury to himself or another *at the hands of Miguel Zuniga* if he did not participate in the said offense and that so believing, he did participate, then you will acquit the defendant and say by your verdict "Not Guilty."
>
> If, however, after viewing the facts from the defendant's standpoint at the time, you do not find by a preponderance of the evidence that the defendant's participation in the said offense, if any, was compelled by such threat of imminent death or serious bodily injury to himself or another *at the hands of Miguel Zuniga* as would render a person of reasonable firmness incapable of resisting the pressure thereof, then you will find against the defendant on his defense of duress.

(Emphasis added.)   Appellant did not submit a proposed charge or request an additional instruction.   At the charge conference, he affirmatively stated that he had no objections to the charge.

## Standard of Review

Generally, a trial court must instruct a jury by "a written charge distinctly setting forth the law applicable to the case."   TEX. CODE CRIM. PROC. ANN. art.

5

36.14 (Vernon 2007); *McIntosh v. State*, 297 S.W.3d 536, 542 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  And a trial court has a duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge.  *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013).  A defendant is entitled to a jury instruction on any *defensive theory* raised by the evidence or testimony when such an instruction is properly requested.  *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984); *see also Shaw v. State*, 243 S.W.3d 647, 655 n.7, 658 (Tex. Crim. App. 2007) (when evidence raises defensive theory, theory must be submitted to jury regardless of whether supporting evidence "strong, feeble, unimpeached, contradicted, credible, or incredible").  However, a trial court "has no duty to sua sponte charge [a] jury on unrequested defensive issues" because an unrequested defensive issue is not law "applicable to the case."  *Vega*, 394 S.W.3d at 519.  And a defendant may not complain on appeal that a trial court failed to include a defensive instruction that was not preserved by request or objection.  *Id.*

Where, however, a trial court "does charge on a defensive issue (regardless of whether [it] does so sua sponte or upon a party's request), but fails to do so correctly, this is charge error subject to review under *Almanza*."  *Id.*; *see Almanza v. State*, 686 S.W.2d 157, 171–73 (Tex. Crim. App. 1984).  If an objection was made at trial, reversal is required if the accused suffered "some harm" from the

error. *Vega*, 394 S.W.3d at 519. However, if a proper objection was not made, reversal is required only if the error caused "egregious harm." *Id.*

"Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error." *Mcintosh*, 297 S.W.3d at 543; *Almanza*, 686 S.W.2d at 171. "Egregious harm consists of error affecting the very basis of the case or depriving the defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction or punishment clearly and significantly more persuasive." *Mcintosh*, 297 S.W.3d at 543. To determine whether a defendant has sustained harm from an instruction to which he did not object, we consider (1) the entire charge, (2) the state of the evidence, (3) arguments from counsel, and (4) any other relevant information. *Vega*, 394 S.W.3d at 521; *Mcintosh*, 297 S.W.3d at 543.

## Jury Charge

In his sole issue, appellant argues that the trial court, in its charge, erred in its application of the law to the facts on his affirmative defense of duress because it "limited the jury to finding for" him "only if [he] was in fear of imminent loss of life or serious bodily injury at the hands of [Zuniga] alone," and not also at the hands of "other unknown individuals who were involved with Zuniga or involved in a drug cartel." He asserts that the trial court's instruction impermissibly

7

narrowed the facts under which the jury could find duress, undercutting his defense and causing egregious harm.

"It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL CODE ANN. § 8.05(a) (Vernon 2011). To establish compulsion, a defendant must prove that "the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id*. § 8.05(c). An imminent threat has two components: (1) the person making the threat must intend and be prepared to carry out the threat immediately and (2) the threat must be predicated on the threatened person's failure to commit the charged offense immediately. *See Devine v. State*, 786 S.W.2d 268, 270–71 (Tex. Crim. App. 1989); *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Threats of future harm are not sufficient. *Devine*, 786 S.W.2d at 271.

Appellant argues that he presented evidence that his fear of imminent death or serious bodily injury to himself or another included acts by "other unknown individuals who were involved with Zuniga or involved in a drug cartel" because he "spoke repeatedly in terms of being in fear of what 'they' might do to him or his family," as follows:

8

| | |
|---|---|
| [Defense Counsel]: | If you didn't help—I guess essentially you're saying you were just holding these things until someone picked then up? |
| [Appellant]: | They threatened me so that I could leave them there until somebody—well, somebody supposed to call me so that I could deliver them there. |
| [Defense Counsel]: | Deliver them? |
| [Appellant]: | Well, somebody was going to pick them up. |
| [Defense Counsel]: | And back to Miguel Zuniga, he threatened you, right? |
| [Appellant]: | Yes. |
| [Defense Counsel]: | And did you feel that his threat, if you didn't help him out, would result in your death and your family's death? |
| [Appellant]: | Yes. I got very nervous. |
| [Defense Counsel]: | Did you think that this consequence of death would happen like within a couple of weeks? |
| [Appellant]: | At that moment I got really nervous, so I wasn't thinking about time. They could have done it at the same time at the moment. |
| [Defense Counsel]: | So your feeling is if you don't do this, they're going to kill my family. If I don't do this today, they know where my wife lives, my kids live, my parents live, they're going to go over there and kill them? |
| [Appellant]: | Yes. |

9

Appellant further testified that although he anticipated that the package to be delivered would contain "drugs," he "had to accept it." Otherwise, "they" were going to kill him or his family.

"The duress defense is based on compulsion by threat and focuses on the conduct of the person making the threat[]." *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. 1979). A defendant's claim of duress must have an objective, reasonable basis. *See Arroyo v. State*, No. 14-01-00599-CR, 2002 WL 31043275, at *2 (Tex. App.—Houston [14th Dist.] Sept. 12, 2002, pet. ref'd) (not designated for publication) ("compulsion" exists only if force or threat of force would render person of reasonable firmness incapable of resisting (citing TEX. PENAL CODE ANN. § 8.05(c)).

Here, there is no evidence that any person other than Zuniga made threats to appellant. *See Montgomery*, 588 S.W.2d at 953. And there is no evidence to support an objective basis for his claim of compulsion. *See Arroyo*, 2002 WL 31043275, at *2. Appellant's perceived fear, absent any actual threat by another of imminent death or serious bodily injury, is insufficient to warrant an instruction regarding compulsion imposed by "other unknown individuals." *See id.* ("Without evidence of a specific, objective threat, [the defendant's] testimony about his vague and subjective fears is insufficient as a matter of law to support an instruction on duress."); *Mohabbat v. State*, No. 01-91-00494-CR, 1993 WL 5277, at *6 (Tex.

App.—Houston [1st Dist.] Jan. 14, 1993, pet. ref'd) (not designated for publication) (defendant's inference of threat insufficient to require instruction on duress defense); *see also Cameron v. State*, 925 S.W.2d 246, 250 (Tex. App.—El Paso 1995, no pet.) (no evidence to support objective basis for claim of compulsion, where defendant "generally afraid" and presented "no evidence of any specific, objective threat" made to him at time of commission of offense); *Bernal v. State*, 647 S.W.2d 699, 706 (Tex. App.—San Antonio 1982, no pet.) (defendant's testimony that he "was afraid" co-defendant "might get violent" insufficient to warrant duress instruction).

In support of his argument, appellant relies on *Vega*, 394 S.W.3d at 519–20. In *Vega*, a case involving the defense of entrapment, the defendant testified that he was induced by a law enforcement officer, M. Whitlock, and a confidential informant, "Jerry," to engage in the offense of delivery of a controlled substance. *Id.* at 516–17. The trial court, in its charge, however, allowed the jury to consider only inducement by Whitlock. *Id.* at 518. The defendant argued on appeal that inducement by Jerry should have been included in the application paragraph. *Id.* And the court of criminal appeals held that the trial court's instruction should have included inducement by Jerry, Whitlock, or both, because the evidence showed that Whitlock first learned about the defendant through Jerry and the defendant testified that it was Jerry who had suggested that he deliver narcotics to Whitlock.

*Id.* at 520. Here, however, there is no evidence of participation by anyone other than Zuniga in making any threats against appellant.

Further, a threat of death at some indefinite time in the future is insufficient to satisfy the requirement of imminence. *Devine*, 786 S.W.2d at 271. And appellant testified that the threat Zuniga posed was not imminent:

> [State]:  Now, when he threatened you, there was no—
> [Zuniga] didn't have anyone—he didn't have anyone
> kidnapped at the time or with him, did he?
>
> [Appellant]:  No.
>
> [State]:  He was just making a threat?
>
> [Appellant]:  Yes.
>
> [State]:  None of your family members were in imminent harm
> at that second, right?
>
> [Appellant]:  No.

We conclude that appellant has not shown that he was entitled to an instruction on the defense of duress based on compulsion from "other unknown individuals." Accordingly, we hold that the trial court did not err in not including "other unknown individuals" in its duress instruction to the jury.

We overrule appellant's sole issue.

**Conclusion**

We affirm the judgment of the trial court.


                                        Terry Jennings
                                        Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Do not publish.   TEX. R. APP. P. 47.2(b).