

# NUMBER 13-20-00120-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN REYES,                                                   **Appellant,**

**v.**

THE STATE OF TEXAS,                                         **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Chief Justice Contreras**

Appellant John Reyes was tried for the murder of four-month-old Jovanni Reyes, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(c). A Nueces County jury returned a guilty verdict and assessed punishment at seventy years' imprisonment. On appeal, appellant argues: (1) the evidence was insufficient to support his conviction; and (2) the trial court erred by failing to instruct the jury on the lesser-included offense of

manslaughter. We affirm.

## I.   BACKGROUND

Appellant was indicted on three counts: capital murder, injury to a child, and murder. Count 1 alleged that appellant intentionally and knowingly caused the death of Jovanni Reyes (the complainant or Jovanni), a child under the age of ten years,

> by throwing the complainant with the Defendant's hand(s) AND/OR by striking the complainant with Defendant's hand(s) AND/OR with or against an unknown object, AND/OR by shaking the complainant with defendant's hands, AND/OR by causing a violent AND/OR rapid acceleration/deceleration injury to the complainant, AND/OR by a manner and means unknown to the grand jury AND/OR any combination thereof . . . .

*See id.* § 19.02(b)(1). Count 2 alleged that appellant intentionally and knowingly caused serious bodily injury to Jovanni by striking him "on and/or against and or with a blunt object . . . ." *See id.* § 22.04(e). The first paragraph of Count 3 alleged that appellant, with the intent to cause serious bodily injury to Jovanni, committed an act clearly dangerous to human life that caused his death by the manners and means listed in Count 1. *See id.* § 19.02(b)(2). The second paragraph of Count 3 alleged that appellant committed or attempted to commit an act clearly dangerous to human life that caused Jovanni's death, by the manners and means specified in Count 1, while "in the course of intentionally and knowingly committing a felony or attempting to commit a felony, to wit: injury to a child . . . ." *See id.* § 19.02(b)(3). Count 2 was dismissed prior to trial.

At trial, Officer Wesley Belcher of the Corpus Christi Police Department testified that on September 8, 2018, he responded to a report of an unconscious baby at Costa Tarragona Apartments. When he arrived at the third-floor unit, he saw three adults, including appellant, kneeling on the floor in the kitchen around the baby. Appellant, the child's father, was performing CPR. According to Belcher, appellant said

he was getting ready to change the diaper on the baby and he placed the baby on the counter when another child began to mess with the trash, the trash can. [Appellant] said, as he turned around to deal with that child, the baby rolled off the counter and landed on his head.

Paramedics arrived and took the baby to the hospital. Belcher said appellant later asked if the baby had arrived at the hospital, but appellant did not ask about the baby's condition, and appellant did not attempt to go to the hospital to see the baby. A video recording from Belcher's bodycam was played for the jury and entered into evidence. Belcher stated appellant was cooperative but "very rarely" made eye contact with him during questioning. Belcher also noted that he did not see any diapers or baby wipes on the counter off of which appellant claimed the baby fell. On cross-examination, Belcher noted that appellant was using "both hands" when performing CPR on Jovanni; however, according to Belcher's training, only two fingers should be used when performing CPR on an infant, to avoid causing further injury.

Chris McClure testified he was in charge of investigating crimes against children for the Corpus Christi Police Department in 2018. He also responded to the scene and spoke to appellant. According to McClure, appellant said

that he had picked up his infant child to change him, and in the midst of that, another child who was about two years old had gotten into the trash and he placed the infant on the kitchen counter and went to deal with the trash and then suddenly realized that the infant had fallen to the floor.

McClure said appellant reported placing Jovanni "on the counter to the left of the range." McClure testified that the counter was about three feet high and the floor was covered in vinyl tile or linoleum. Photographs from the kitchen were entered into evidence. McClure said he saw "a strip of the EKG leads that the medics used apparently on the child" on the kitchen floor; however, he did not see any blood or bodily fluids, nor did he see any trash or clutter on the kitchen floor. He also did not see any diapers or baby wipes

3

anywhere in the kitchen, though there was an open box of diapers or wipes in the adjacent living room. He noted in his report that the trash can in the kitchen had a swinging lid which was "securely" in place.

Paramedic Justin Siemens of the Corpus Christi Fire Department testified he arrived at the scene to find a four-month-old male child laying supine on the kitchen floor. The baby was not breathing, had no pulse, was pale in color, and there was "trauma noted to his lips and lower teeth." Siemens performed CPR and asked appellant what happened. Appellant told Siemens the "child had fallen off of the counter and onto the floor" and then "stopped breathing." Siemens and other paramedics administered an EKG and found that the CPR had generated "pulseless electrical activity" but no "correlating pulse." They took the child to Driscoll Children's Hospital, where he was pronounced dead on September 12, 2018.

Ray Fernandez, M.D., the Nueces County Medical Examiner, testified that he performed an autopsy on Jovanni on September 17, 2018. Fernandez found that Jovanni suffered a sub-scalp hemorrhage and cerebral edema, retinal hemorrhages, subarachnoid hemorrhages on the left and right sides, and subdural hemorrhages on the left side.[1] Fernandez also observed that Jovanni had fractures to his ribs and left femur which were healing, and that there were no external abrasions or bruises noted.[2] He opined that the internal head injuries were caused by "significant force" and that "[a] simple fall from a three-foot counter would not be expected to cause the totality of findings

---

[1] Fernandez explained that a subarachnoid hemorrhage is on the surface of the brain, while a subdural hemorrhage is below the dura, a membrane that covers the brain.

[2] According to Fernandez, the rib and thigh fractures occurred before the head trauma and were not caused by the CPR performed on September 8, 2018.

4

you have here." Instead, based on his experience, the multiple internal head injuries were more consistent with a two-story fall or a motor vehicle accident. He said a baby with these injuries would not be acting or eating normally. Fernandez concluded that the cause of Jovanni's death was blunt force trauma to the head, and the manner of death was homicide. Photographs from the autopsy were entered into evidence. On cross-examination, Fernandez conceded that it was possible, though not likely, for an infant to sustain severe or even fatal injuries after falling from three feet.

Raquel Vargas-Whale, a pediatrician that treated Jovanni at the hospital, testified that lab tests revealed no evidence of any kind of bleeding disorder. She stated that it was "highly unlikely" that Jovanni's extensive internal injuries were caused by a three-foot fall onto a linoleum floor. Instead, she concluded that the injuries were caused by "abusive head trauma."

Crystal Krueger, an investigator with the Department of Family and Protective Services (the Department), testified that in 2015, the Department received a report of neglectful supervision by appellant and Amber Martinez, Jovanni's mother. According to Krueger, the report alleged drug use in the home by both appellant and Martinez. Later in 2015, the Department received a report that appellant and Martinez slapped Martinez's six-year-old daughter in the face. In 2017, the Department received a report of medical neglect concerning appellant's and Martinez's two-year-old son Josiah, who has multiple heart and lung conditions; the report alleged that appellant and Martinez failed to take the child to follow-up medical appointments after he was hospitalized. Also in 2017, Martinez's daughter showed up at school with a "very large circular bruise on her eye." Finally, the Department received a report that Jovanni tested positive for opioids when he

was born on April 29, 2018. Krueger stated the Department sought and obtained removal of all the children after the September 8, 2018 incident.[3]

J.R. Rodriguez of the Corpus Christi Police Department stated he interviewed appellant twice. Video recordings of the interviews were entered into evidence. In the first interview, appellant stated he picked up Jovanni from a playpen in the living room when he noticed Josiah attempting to take food from a trash can in the kitchen. Appellant said he walked past Josiah and put Jovanni on the kitchen counter. Rodriguez said appellant did not give a direct answer as to whether he actually saw Jovanni fall to the floor. According to Rodriguez, appellant "was trying to explain that by the time he turned, the baby was already, either had already hit the floor or was very close to hitting the floor." Appellant told Rodriguez in the second interview that, after he picked Jovanni up from the floor, he shook the baby back and forth.

Martinez testified that, on September 8, 2018, she was working and appellant was alone at home with her daughter and the three children she had with appellant. She said Jovanni was awake and acting normally when she left the apartment in the morning. Appellant called her in the late afternoon and told her to come home immediately. Martinez called her mother and sister, who lived closer, and told them to go to the apartment. By the time Martinez was able to leave work, paramedics were already en route to the hospital with Jovanni, so she went to the hospital as well. Appellant told Martinez that Jovanni "had fallen." Martinez recalled that her daughter once broke her arm at a playground while in the sole care of appellant. Further, she recalled that appellant

---

[3] According to a Department caseworker, the children were living with their maternal grandmother at the time of trial.

claimed he "he tripped over the carpet and . . . fell on Jovanni" at her sister's apartment, causing Jovanni's fractured femur.

Martinez testified that, when she was pregnant with Jovanni, she told her cousin that appellant might not be the father. Subsequently, she got into an argument with appellant regarding her conversation with her cousin. She said she had no reason to disbelieve appellant concerning the causes of the other injuries to her children.

Andres Hoch, a therapist, testified he provided counseling to Martinez's daughter and appellant's and Martinez's eldest son Jordan. Over appellant's objection, Hoch testified that Martinez's daughter reported to him that appellant "used to choke me and slam us and put Jordan to sleep," meaning choke him until he lost consciousness. The daughter told Hoch that "[appellant] would hold [Jordan] against the wall and count choking [sic] him until he fell asleep. He always makes us bleed." The daughter told Hoch that "[appellant] told us that if people ask, he'd tell us to lie and say we fell off [a] bike or on the floor. He'd make us believe all this stuff happened because Jovanni didn't look like him." The daughter later conceded to Hoch that she may have been recalling a dream. Hoch opined, however, that he had "never heard anything so detailed before in [his] experience" and he believed the daughter was being truthful, in part because Jordan "admitted the same exact thing" at a subsequent session. In particular, according to Hoch, Jordan reported that appellant would choke Jovanni "all the time . . . because he didn't look like him."

Maria Ramos, appellant's mother, testified that she lived in the subject apartment with appellant, Martinez, and the four children. She said that Jovanni was asleep when she left for work at around 10:30 a.m. on September 8, 2018, and she returned at about

7

10:45 p.m. She denied ever seeing appellant hit or otherwise physically discipline the children.

With respect to Count 1, the jury found appellant guilty of the lesser-included offense of manslaughter. With respect to Count 3,[4] the jury found him guilty of the charged offense of murder, and it assessed punishment at seventy years' imprisonment. Subsequently, the trial court granted the State's motion to dismiss Count 1 and rendered judgment in accordance with the jury's verdict on Count 3. This appeal followed.

## II.    DISCUSSION

### A.    Lesser-Included Offense

By his second issue on appeal, which we address first, appellant argues the trial court erred by declining to instruct the jury on the lesser-included offense of manslaughter with respect to Count 3.

#### 1.    Standard of Review and Applicable Law

Courts generally use a two-pronged test to determine whether a defendant is entitled to a jury charge instruction on a lesser-included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). The first step of the analysis asks the purely legal question of whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Bullock*, 509 S.W.3d at 924; *see* TEX. CODE CRIM. PROC. ANN. art. 37.09.[5] If that prong is satisfied, the second

---

[4] The jury charge listed this count as "Count 2" to avoid confusing the jury. We refer to it as "Count 3," consistent with the indictment and judgment, also to avoid confusion.

[5] Under code of criminal procedure article 37.09, an offense is a lesser-included offense if:

(1)    it is established by proof of the same or less than all the facts required to establish

8

step is to determine whether "there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *See Bullock*, 509 S.W.3d at 925; *Hall*, 225 S.W.3d at 536. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Cavazos v. State*, 382 S.W.3d 377, 385–86 (Tex. Crim. App. 2012); *Rice*, 333 S.W.3d at 145; *Hall*, 225 S.W.3d at 536. Anything more than a scintilla of evidence will be sufficient to entitle a defendant to a charge on the lesser offense. *Hall*, 225 S.W.3d at 536. However, "[i]It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385; *see Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013).

### 2. Analysis

The State argues that appellant failed to preserve this issue. *See* TEX. R. APP. P. 33.1(a)(1). Ordinarily, we will review all complaints regarding the jury charge for error, and

---

the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09.

9

then impose a more stringent harm requirement for any errors which have not been preserved by timely objection or request at trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, "[t]he principles of *Almanza* do not apply to omissions from the jury charge of defensive issues that have not been properly preserved by a defendant's request or objection." *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). That is because, though Texas Code of Criminal Procedure article 36.14 requires the trial court "to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge," an "unrequested defensive issue is not the law 'applicable to the case.'" *Id.* at 519; *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. Accordingly, "[a] defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint." *Vega*, 394 S.W.3d at 519; *see Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010) (holding that a jury instruction on a lesser-included offense is not "law applicable to the case" absent a request by the defense for its inclusion in the jury charge).

In arguing that his issue has been preserved for our review, appellant points to a remark made by his trial counsel during the charge conference. While discussing the felony murder allegation in the second paragraph of Count 3, the trial court observed that the indictment alleged appellant caused Jovanni's death while "intentionally or knowingly" committing or attempting to commit injury to a child; therefore, the trial court concluded that appellant was not entitled to an instruction on the definition of "reckless." Defense counsel then asked: "Are we going to add that, Judge? Are we going to add the reckless intent?" The trial court reiterated that the charge would not include an instruction on the

10

definition of recklessness.[6] Defense counsel stated: "I agree with that, Judge." At the conclusion of the charge conference, defense counsel stated he had no objections to the charge as submitted.

Appellant appears to argue that his counsel's question regarding an instruction on "reckless intent" preserved the complaint which he now makes on appeal—i.e., that the charge on Count 3 should have allowed the jury to convict on the lesser-included offense of manslaughter. We agree with the State that this issue has not been preserved. Defense counsel never asked for an instruction on manslaughter with respect to Count 3, and no such request may be reasonably inferred from counsel's brief remark set forth above. Instead, counsel twice expressly stated that he had no objection to the charge as submitted. Because the issue was not preserved at trial, it is overruled. *See* TEX. R. APP. P. 33.1(a)(1); *Tolbert*, 306 S.W.3d at 780; *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007) (noting that a trial court does not have a duty to *sua sponte* instruct the jury on "all potential defensive issues, lesser-included offenses, or evidentiary issues" because "[t]hese are issues that frequently depend upon trial strategy and tactics").

## B.    Evidentiary Sufficiency

By his first issue, appellant argues the evidence was insufficient to support his conviction.

---

[6] In fact, the jury charge included the following definition in the section governing Count 3:

*Recklessly Causing Bodily Injury*

A person recklessly causes bodily injury to another if the person is aware of but consciously disregards a substantial and unjustifiable risk that the person's action will cause bodily injury to another. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*See* TEX. PENAL CODE ANN. § 6.03(c).

11

### 1. Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In reviewing evidentiary sufficiency, we consider "the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. Thus, we defer to the jury's resolution of any conflicts in the evidence. *See Brooks*, 323 S.W.3d at 899.

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240. Here, a hypothetically correct jury charge, consistent with the indictment, would instruct the jury to find appellant guilty on Count 3 if: (1) with the intent to cause serious bodily injury to Jovanni, appellant committed an act clearly dangerous to human life that caused Jovanni's death; or (2) appellant intentionally or knowingly committed or attempted to commit the felony offense of injury

to a child, and "in the course of and in furtherance of the commission or attempt," he committed or attempted to commit an act clearly dangerous to human life that caused Jovanni's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2), (b)(3). A hypothetically correct jury charge would instruct the jury that a person commits the felony offense of injury to a child if he intentionally or knowingly causes bodily injury to a person fourteen years of age or younger. *See id.* § 22.04(a).[7] A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

## 2. Analysis

Appellant contends that the evidence "conclusively raises a reasonable doubt" regarding his intent to cause bodily injury by committing an act clearly dangerous to human life. He notes that, according to Fernandez, Jovanni's rib fractures were already healing by the time he sustained his fatal head injuries, and it is possible for an infant to sustain fatal injuries from a three-foot fall. However, Fernandez and Vargas-Whale both testified that it was unlikely that Jovanni's internal injuries were caused by a mere three-foot fall; Fernandez opined that Jovanni's injuries were more consistent with a two-story fall. Appellant also points to the uncontroverted evidence that Jovanni had no neck

---

[7] The statute defining felony murder does not require a showing that the defendant "intentionally or knowingly" committed or attempted to commit the underlying predicate felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(2). Moreover, the felony offense of injury to a child, as defined in the penal code, may ordinarily be committed recklessly or with criminal negligence. *See id.* § 22.04(a). As noted, however, the second paragraph of Count 3 of the indictment specified that appellant caused Jovanni's death while in the course of "intentionally or knowingly" committing or attempting to commit injury to a child. Therefore, a hypothetically correct jury charge would incorporate this *mens rea* allegation. *See Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

We note that the actual jury charge did not define the felony offense of injury to a child. Appellant does not complain about this omission on appeal.

injuries, no skull fracture, and no externally visible injuries such as bruising or bleeding. But appellant does not dispute that he was alone responsible for taking care of Jovanni at the time of his death, nor does he deny that he admitted to Rodriguez that he shook the child back and forth after picking him up from the floor. Courts have found sufficient evidence to support a murder conviction in similar circumstances. *See Garcia v. State*, 16 S.W.3d 401, 406 (Tex. App.—El Paso 2000, pet. ref'd) (finding evidence sufficient to support murder conviction where appellant was alone with the child when her injuries were sustained and admitted to shaking the child, punching her in the stomach, and "delivering a karate-type chop to her nose"); *Bryant v. State*, 909 S.W.2d 579, 583 (Tex. App.—Tyler 1995, no pet.) (same where evidence showed child had been left alone with defendant and injuries to child occurred approximately thirty minutes prior to child being brought to emergency room); *Elledge v. State*, 890 S.W.2d 843, 846 (Tex. App.—Austin 1994, pet. ref'd) (same where medical testimony placed adult defendant alone with child when fatal injuries were sustained); *Butts v. State*, 835 S.W.2d 147, 151 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) (same where injuries sustained by child were established by medical testimony to have occurred at time adult defendant admitted to sole possession of child).

Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In addition to testimony that Jovanni's injuries were so severe that they likely did not result from a mere three-foot fall from a counter, the jury also heard testimony that there were no baby wipes or diapers found in the kitchen where Jovanni supposedly fell while appellant claimed to be in the process of changing his diaper; that appellant had

14

previously claimed that other children had suffered injuries from "falling" while in his sole care; and that Martinez's daughter and son both reported that appellant would choke Jovanni because he looked different. From the evidence described above, a rational juror could have concluded beyond a reasonable doubt that appellant committed an act clearly dangerous to human life that caused Jovanni's death either (1) with the intent to cause serious bodily injury to Jovanni, or (2) in the course of and in furtherance of intentionally or knowingly committing or attempting to commit the felony offense of injury to a child.

We overrule appellant's first issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
2nd day of December, 2021.