**AFFIRMED and Opinion Filed August 5, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-22-00743-CR**

**JEYCOOL PENAPEREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-34280-W**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Reichek

Following a jury trial, Jeycool Penaperez appeals his conviction for the offense of murder. In three issues, he challenges the sufficiency of the evidence to support the jury's rejection of his self-defense theory and contends the trial court erred in denying a jury instruction on the law of apparent danger. We also address unassigned error in an application paragraph in the charge. For reasons that follow, we affirm.

**BACKGROUND**

Appellant was charged with the capital murder of Yoni Jiminez. The indictment alleged that on or about June 27, 2021, while in the course of robbing or attempting to rob Jiminez, appellant intentionally caused Jiminez's death by shooting him with a firearm. At trial, appellant did not contest that he shot Jiminez. During his opening statement, defense counsel asserted appellant and Jiminez had an intimate relationship and appellant shot Jiminez to protect himself from being sexually assaulted by Jiminez.

Evidence showed that Jiminez left his home in Irving at about 1:00 a.m. on June 26, 2021, to meet appellant at a gas station. Appellant and Jiminez left the gas station in Jiminez's car, and Jiminez never returned home. At 7:00 a.m. on June 27, Jiminez's family reported him missing to the Irving Police Department. At about the same time, Jiminez was found dead in a creek at Running Bear Park in Irving from two gunshot wounds, one to the head and one to the chest. The left front pocket of his pants was "pulled out like it had been rummaged through," and he did not have any identification or property on him. Autopsy results indicated Jiminez had alcohol and methamphetamine in his system.

Before she knew Jiminez was dead, his sister Julissa looked for him at a park in Dallas on June 27. She testified that appellant was there too. Because appellant was the last person who saw Jiminez, Julissa called the Dallas Police Department out to the park. Appellant told Julissa he did not know where Jiminez was and indicated he was looking for him. Julissa asked to see appellant's phone and left the

park with it. Her cousin turned it over to the Irving police. Julissa testified that her brother did not have a relationship with appellant.

Dallas Police Officer Ricardo Ramirez was called out to the Dallas park regarding a missing person. Ramirez spoke to appellant in Spanish. When Ramirez asked about Jiminez, appellant described him as his "boyfriend" and said he was out looking for him. Appellant first told the officer he was supposed to meet Jiminez at a gas station the previous night, but Jiminez never showed. He then changed his story and said they did meet, but had a disagreement because Jiminez smelled of alcohol. Jiminez left and appellant had not seen him since. Officer Ramirez also spoke to Julissa. She used the word "pareja," which Ramirez said meant "couple," to describe the relationship between appellant and Jiminez.

Irving Police Detective Kevin Burkleo was trained in cell phone mapping, which estimates a person's location in relation to cell towers. He reviewed records from the cell phones of appellant, Jiminez, and Abraham Gonzalez, an acquaintance of appellant's who lived near Running Bear Park, and used them to map their locations at the relevant times. The mapping showed Jiminez left his home at about 1:09 a.m. on July 26 and that he, appellant, and Gonzalez were all at a 7-Eleven on Singleton Boulevard a few minutes later. Then appellant and Jiminez moved away from the 7-Eleven and traveled together for about an hour, and Gonzalez left the 7-Eleven separately. At about 2:11 a.m., all three phones were in the area of Running Bear Park. At 5:30 a.m., all three phones were at Lake Lavon in Collin County.

Then appellant and Gonzalez travelled back to Irving, while Jiminez's phone stayed at Lake Lavon until it shut off.

Irving Police Detective David Gorski was the primary investigator in this case. He became aware of charges made to Jiminez's credit card between June 26 and 28. Police obtained surveillance videos associated with credit card charges at two Shell stations. The evidence showed Gonzalez went inside the gas stations to make purchases with Jiminez's card. He bought beer, Cheetos, and other items at one Shell station at about 10:30 a.m. on June 26. On June 28, Gonzalez used Jiminez's card at another Shell station. Cell phone evidence showed appellant was present at the locations where the card was used.

Police found Jiminez's car on June 29 in a remote location near Lake Lavon about an hour north of Irving. The car was "deep off the roadway" down a long dirt road, and the inside had been burned. Gorski obtained arrest warrants for appellant and Gonzalez. They were arrested on those warrants in early August 2021 near New Orleans.

Gorski and a Spanish-speaking officer went to Louisiana to interview appellant. The interview was conducted in Spanish, and an English transcription of it was admitted into evidence, as was a video version with the certified translation added. Appellant told the officers he went to Louisiana because Jiminez's family members wanted to kill him. Appellant said he had known Jiminez for about two

weeks before "the incident" occurred and that Jiminez was his boyfriend. Appellant met Jiminez through a "very bad friend," Edwin Ocon.

During the interview, appellant gave five versions of what happened to Jiminez. Appellant first told the police that Ocon killed Jiminez and told Jiminez's family that appellant killed him. Ocon threatened to kill appellant if he told anyone. After police told appellant they had his cell phone and that information from the phone showed he was at Running Bear Park where Jiminez was killed, appellant changed his story. He said Jiminez picked him up at the gas station and they went to the park together. Jiminez wanted to kiss appellant, but appellant refused because Jiminez smelled of alcohol. Appellant left, and Ocon called appellant later to tell him Ocon killed Jiminez.

When pressed for the truth, appellant said the truth was that Jiminez wanted to rape him by force in the park. Appellant told him no, and Jiminez threatened to kill him or have him killed. Appellant said Jiminez pulled out a gun. After a struggle, Jiminez shot himself in the head, saying "[I]f I'm not going to be yours . . . I'm not going to be anyone's." Jiminez fell toward the water. Appellant left and ran to Gonzalez's house.

Gorski continued to ask appellant for the truth. The last two versions appellant gave police involved him shooting Jiminez. In the fourth version, appellant and Jiminez were at the park and Jiminez wanted sex. Appellant did not want to have sex because Jiminez was high on what appellant believed was cocaine. Jiminez had

a gun and "put it on" appellant. Appellant took the gun and shot Jiminez, who fell into the water. Appellant said he shot Jiminez in self-defense because Jiminez was going to kill him. He and Gonzalez dropped off Jiminez's car at a lake, and appellant burned the car.

In appellant's final version, Jiminez did not have a gun. Appellant brought a gun to the park. He went to the park with Jiminez to have sex with him, but did not want to because Jiminez was high. Jiminez grabbed appellant "by force" and said if appellant did not have sex with him, he would kill him. Jiminez hit appellant in the face. Appellant told police he shot Jiminez in self-defense and pushed him in the water. Appellant then threw the gun in the water. Appellant had not intended to steal from Jiminez, but took his wallet after he shot him because he did not have any money. With Gonzalez's help, he burned Jiminez's car. Police asked appellant why he used his gun when Jiminez only hit him. Appellant explained it was out of fear because Jiminez wanted to rape him. Appellant was only 18 years' old and Jiminez was bigger than he was.

In addition, the State's evidence included a transcript of a recorded phone call appellant made to his aunt from the Dallas County Jail. He told her Gonzalez did "the death that they blame me for" and took the car. Gonzalez got out of jail because he told people appellant killed "that person." Appellant told his aunt he only told police he killed "that person" out of fear.

The jury charge contained instructions on the offense of capital murder and the lesser-included offense of murder. The charge also included the law on self-defense as it applied to murder. The jury found appellant guilty of murder and assessed his punishment at life in prison and a $10,000 fine. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, appellant challenges the legal and factual sufficiency of the evidence to support the jury's rejection of his self-defense theory. Appellant's brief is vague on why the jury should have found he acted in self-defense, but he appears to argue his actions were justified because Jiminez used or attempted to use deadly force against him. He states, "[A] rational jury would have believed that [Jiminez] acted in such a manner that deadly force could have been used against Appellant." That was not the theory of self-defense argued to the jury. While at one point appellant told police Jiminez had a gun and pulled it on him, in his final version of events, Jiminez was unarmed and did not use deadly force. Appellant ultimately told police he brought a gun to the park and shot Jiminez to prevent being raped. Self-defense to prevent a sexual assault was the only theory of self-defense argued by the defense at trial. In his opening statement, defense counsel said the case was about "a sexual assault gone wrong." Either way, however, the evidence supports the jury's verdict.

As charged in this case, a person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1).

–7–

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32(a)(2).

The defendant bears the burden to produce evidence of self-defense, while the State bears the burden of persuasion to disprove self-defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). The State is not required to produce evidence refuting the self-defense claim; it is required to prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury. *Id.* at 609.

We review sufficiency challenges to the jury's rejection of such a defense under the *Jackson v. Virginia* standard. *Johnson v. State*, No. 05-19-01569-CR, 2021 WL 1808088, at *3 (Tex. App.—Dallas May 6, 2021, no pet.) (mem. op., not designated for publication). Under that standard, we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the self-defense

–8–

issue beyond a reasonable doubt. *Braughton*, 569 S.W.3d at 609. Legal sufficiency is measured according to a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 1991). Determining the credibility of the evidence is solely within the jury's province and the jury is free to accept or reject defensive evidence. *Braughton*, 569 S.W.3d at 609.

Viewing the evidence in this case in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. Appellant did not testify; his claim of self-defense came in through statements he made to the police after he was arrested. Appellant gave detectives five versions of what happened. He initially claimed he was not present at Running Bear Park. It was only after he learned police got his location from his phone that he admitted to being at the park when Jiminez died. Even then he did not immediately claim he acted in self-defense. He initially said Jiminez committed suicide. Only his last two accounts involved self-defense. Then, later when he was in jail awaiting trial, he told his aunt Gonzalez killed Jiminez. These changing stories support a conclusion appellant's claim of self-defense was not credible.

Additionally, appellant's actions following the shooting were inconsistent with his claim of self-defense and show a consciousness of guilt. When appellant talked to police in Dallas before Jiminez's body was identified, he pretended to be

looking for Jiminez when he knew he was dead. After he killed Jiminez, he pushed him into the water and took his wallet and his car. He hid the car in a remote location and burned the inside of it. Then he fled to another state. We conclude the evidence is sufficient to support the jury's verdict. We overrule appellant's first and second issues.

**REFUSAL OF REQUESTED JURY INSTRUCTION**

In his third issue, appellant argues the jury instructions on self-defense should have included an instruction on the law of apparent danger. We disagree.

In a section for the applicable law on self-defense, the charge instructed the jury that a person is justified in using force against another when and to the degree he reasonably believes force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31(a). It further instructed that a person is justified in using deadly force against another if he would be justified in using force against the other in the first place and when and to the degree he reasonably believes that such deadly force is immediately necessary to protect himself or another against the other person's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of several offenses, including sexual assault and aggravated sexual assault. *See id.* § 9.32(a). The charge defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *See id.* § 1.07(a)(42).

Appellant's counsel asked the trial court to also include the "textural law of apparent danger" in the self-defense portion of the charge. He asked the court to give the following instruction and a related application paragraph:

When a person is attacked with unlawful force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by a person, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

Defense counsel argued the instruction was critical because an issue before the jury was whether Jiminez attacked appellant and the jury needed to know an actual attack was not required. Counsel acknowledged the instruction was not required under the case law, but said he wanted to preserve the issue for appellate review in hopes the Texas Court of Criminal Appeals or United States Supreme Court would change the law. The trial court denied the request.

The trial court must provide the jury with a written charge that sets forth the law applicable to the case. *Chambers v. State*, 663 S.W.3d 1, 3 (Tex. Crim. App. 2022); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. We review a claim of alleged charge error by determining whether the charge was erroneous, and if it was, we

–11–

conduct a harm analysis. *Chambers*, 663 S.W.3d at 4; *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

A person has the right to defend himself from apparent danger to the same extent as if the danger was real. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Appellant cites *Jones v. State*, 544 S.W.2d 139 (Tex. Crim. App. 1976), to support his argument that he was entitled to an apparent danger instruction. In *Jones*, the court of criminal appeals reversed and remanded because the trial court refused the defendant's request for an instruction on the law of apparent danger as viewed from the defendant's standpoint when the defendant's testimony raised the issue. *Id.* at 142–43.

Three years later, the court of criminal appeals clarified its holding in *Jones* when it rejected a similar argument. *See Valentine v. State*, 587 S.W.2d 399, 400 (Tex. Crim. App. [Panel Op.] 1979). In *Valentine*, unlike *Jones*, the trial court instructed the jury that the defendant's conduct would be justified if she reasonably believed the deceased was using or attempting to use unlawful deadly force against her at the time of the shooting. *Id.* at 400–01. The charge also contained the penal code definition of "reasonable belief" given in this case—"a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *Id.* at 401; TEX. PENAL CODE ANN. § 1.07(a)(42). The *Valentine* court determined that by defining "reasonable belief" as it did, the trial court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is

–12–

required before one is entitled to exercise the right of self-defense. *Valentine*, 587 S.W.2d at 401; *see Walters v. State*, 247 S.W.3d 204, 212 n.37 (Tex. Crim. App. 2007).

Here, as in *Valentine*, the concept of apparent danger was properly presented. *See Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd). The jury was instructed a person is justified in using deadly force when and to the degree he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of sexual assault, and "reasonable belief" was correctly defined. *See Rider v. State*, No. 05-20-00220-CR, 2022 WL 1769116, at *3–4 (Tex. App.—Dallas June 1, 2022, no pet.) (mem. op., not designated for publication) (rejecting similar argument about apparent danger instruction). As an intermediate court of appeals, we are bound to follow the holdings of the court of criminal appeals. Under *Valentine*, the trial court did not err in denying appellant's requested instruction on the law of apparent danger. We overrule appellant's third issue.

**Unassigned Jury Charge Error**

In reviewing the jury charge, we found an error in the application paragraph on self-defense that was not objected to at trial or raised on appeal. In the section on self-defense, as set out previously, the jury was given the applicable law on using deadly force to protect against another person's use or attempted use of unlawful

–13–

deadly force and to prevent the other's imminent commission of sexual assault and other offenses. The application paragraph, however, did not authorize the jury to acquit appellant on the basis of self-defense to prevent a sexual assault. It provided:

> Now bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that on or about June 27, 2021, in Dallas County, Texas, the Defendant, Jeycool Jonathan Penaperez, did then and there intentionally or knowingly cause the death of Yoni Edenilson Jiminez by shooting him with a firearm, but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed that the deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Yoni Edenilson Jiminez, you will acquit the Defendant and say by your verdict "Not Guilty."

The trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions. *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge. *Vega*, 394 S.W.3d at 519. Once the jury is charged on a defensive issue, a flaw in that charge is error. *Id*. A jury charge that fails to apply the law to the facts adduced at trial is erroneous. *Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018). When a definition or instruction on a defensive theory of law is given in the abstract portion of the charge, the application paragraph must list the specific conditions under which a jury is authorized to acquit. *Vega*, 394 S.W.3d at 520. We conclude it was error for the

–14–

application paragraph to fail to authorize the jury to acquit appellant if it found he was justified in using deadly force to prevent an imminent sexual assault.

We are free to address this issue as one of unassigned fundamental error. *Sanchez v. State*, 209 S.W.3d 117, 120–21 (Tex. Crim. App. 2006) (failure to give written charge distinctly setting forth applicable law is regarded as fundamental). Absent a trial objection, we cannot reverse the conviction on the basis of jury-charge error absent a finding of the requisite egregious harm. *Id.* at 121. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.* In examining the record to determine whether jury-charge error is egregious, we consider the entirety of the charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a while. *Id.* Egregious harm is a high and difficult standard to meet and such a determination must be borne out by the trial record. *Villarreal*, 453 S.W.3d at 433. The harm must be actual, not merely theoretical. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

**Entirety of the Charge**

When looking at the charge as a whole, we conclude this factor weighs somewhat in favor of finding egregious harm. Appellant had two defensive theories. He claimed he did not commit capital murder because he did not cause Jiminez's death in the course of committing robbery, and he claimed he did not commit murder

–15–

because he used deadly force to prevent an imminent sexual assault. His theory that he acted in self-defense to prevent an imminent sexual assault was left out of the application paragraph. However, other portions of the charge would have had some mitigating effect on the omission in the application paragraph. In the paragraphs preceding the application paragraph on self-defense, the charge stated the applicable law on self-defense to prevent the imminent commission of sexual assault. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013) (where erroneous instruction in application paragraph immediately followed correct statement of law in abstract portion, clarity of error may have mitigated harm). Further, the charge mentioned the concept of reasonable doubt numerous times. Immediately after the application paragraph on self-defense, the charge instructed, "If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict 'Not Guilty.'" *Cf. Scott v. State*, No. 05-22-00113-CR, 2024 WL 445942, at *3 (Tex. App.—Dallas Feb. 6, 2024, no pet.) (mem. op., not designated for publication) (finding egregious harm where application paragraph included instruction that jury should find defendant guilty of murder if it had reasonable doubt he was justified in using deadly force).

**The State of the Evidence**

The state of the evidence does not support a finding of egregious harm, given the weakness of appellant's evidence of self-defense. *See Villarreal*, 453 S.W.3d at 439 (no substantial risk that appellant was harmed as result of omission of instruction

on statutory presumption of reasonableness as to belief use of deadly force was immediately necessary to protect himself, where defensive evidence was weak when viewed with other evidence). As discussed in connection with appellant's sufficiency issue, appellant did not present a credible case of self-defense. After his arrest, he gave police five versions of Jiminez's death. He initially claimed to have not been present when Jiminez was killed. He only mentioned self-defense and sexual assault when he knew police could place him at the park. And his actions after the shooting show a consciousness of guilt.

**Arguments of Counsel**

As for the arguments of counsel, both sides discussed at length whether appellant acted in self-defense to prevent a sexual assault. There was no argument about the use of deadly force to prevent Jiminez's use of deadly force, the theory in the application paragraph. Defense counsel said in his opening statement that this case was about appellant "trying not to be raped." In closing, the State's position was that appellant was guilty of capital murder and thus the jury did not need to reach the issue of self-defense. But it did address the claim of self-defense, arguing appellant did not act in self-defense to prevent sexual assault. The State argued appellant did not mention self-defense until he was "put into a corner." The prosecutor questioned why, if appellant thought he was about to be the victim of a sexual assault, he did not scream and also questioned why he took Jiminez's wallet and car.

Defense counsel argued the evidence supported appellant's account to police that he acted in self-defense to prevent a sexual assault. Counsel emphasized evidence that appellant had an intimate relationship with Jiminez and that autopsy results proved Jiminez had been drinking and using methamphetamine, which was consistent with violent and aggressive behavior. Counsel argued appellant thought he was going to be forcibly raped and he took action to stop it. He stated, "[I]f you read the Court's charge, it tells you you have a right to do so if you are in fear of imminent sexual assault." Further, counsel told jurors that if they had a reasonable doubt about whether appellant acted in self-defense, they must resolve that doubt in appellant's favor and find him not guilty.

The State's rebuttal argument focused on rebutting defense counsel's claim of self-defense to prevent a sexual assault. The prosecutor noted that when appellant was interviewed by Dallas police the day after the shooting, he did not have any marks on his face to show Jiminez hit him and he did not mention the attempted rape. Further, appellant shot Jiminez twice, but could have taken off after the first shot if he truly feared a sexual assault. And taking the wallet and car and burning the car were inconsistent with the rape story.

Jury arguments bear significantly on an egregious harm analysis, *see Gelinas*, 398 S.W.3d at 709, and here the arguments weigh against finding egregious harm. Although the application paragraph omitted appellant's theory that his actions were justified to prevent an imminent sexual assault, the arguments of counsel made the

–18–

jury aware of the theory. *See id.* at 707, 709 (jury arguments that involved correct recitation of the law informed jurors of the correct law and likely indicated charge contained a simple mistake). Further, the fact that the State and the defense argued only about self-defense to prevent a sexual assault, and not to prevent Jiminez's use of deadly force, mitigates the error in the application paragraph by reducing the likelihood of confusion about appellant's theory of self-defense.

**Other Relevant Information**

As for any other relevant information, nothing in the record reflects any confusion on the part of the jury regarding the charge. Jurors sent the judge two notes during deliberations, but their questions involved the evidence, or requests to review evidence. *See id.* at 709 (absence of jury note suggests jury was not confused by error in charge.)

Having considered the relevant factors, only one of the four factors, the charge as a whole, weighs in favor of finding egregious harm. Given that the other factors, especially the state-of-the-evidence factor, weigh strongly against a finding of egregious harm, we conclude appellant was not egregiously harmed by the error in the application paragraph on self-defense. *See Rider*, 2022 WL 1769116, at *5–6 (although application paragraph erroneously applied self-defense to only one of two theories of murder, there was no egregious harm).

We affirm the trial court's judgment.

/Amanda L. Reichek/

AMANDA L. REICHEK
JUSTICE

Do Not Publish.
TEX. R. APP. P. 47.2(b).
220743F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

JEYCOOL PENAPEREZ, Appellant

No. 05-22-00743-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-34280-W. Opinion delivered by Justice Reichek. Justices Partida-Kipness and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of August, 2024.