# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00119-CR

---

**David Wayne Massar, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 478TH DISTRICT COURT OF BELL COUNTY
### NO. 22DCR86699, THE HONORABLE WADE NICHOLAS FAULKNER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

David Wayne Massar appeals his indecency-with-a-child convictions on the ground that the trial court committed reversible error when it gave a limiting instruction in the charge to guide the jury in considering extraneous evidence admitted under Texas Rule of Evidence 404(b). He argues the instruction—that the extraneous evidence was only relevant only to prove a plan— constituted a comment on the weight of the evidence and was therefore jury-charge error. We find no error in the charge—which was neither requested nor objected to—and affirm the judgments of the trial court.

## BACKGROUND

In August 2022, when Z.H. was thirteen, Massar, her stepdad, tucked her in to go to sleep. She woke up to the feeling of him "squeezing" her breast. She laid there "in shock." He moved his hand to her "female reproductive organ." "After that," he took her hand "in his hand"

and made her hand "into this kind of shape around his male reproductive organ." She moved her hand away and ran to the bathroom where she washed her "hands and arms."

She told her friend. They went to the public library and looked up what to do on the internet. When school started two days later, Z.H. told the school counselor, whom she knew well. After a forensic investigation, a grand jury indicted Massar on three counts of indecency with a child younger than seventeen years of age. *See* Tex. Penal Code § 21.11(a). The State gave Massar pretrial notice that it intended to introduce evidence of bad acts or extraneous offenses— including his inappropriately punishing his son with a paddle and his touching of his wife without her consent:

> Alison [Chappell] disclosed on December 4, 2023 that early in her marriage to the defendant, [she] would be awaken[ed] to David Wayne Massar touching her breasts and her sexual organ without her permission. Alison reported that this occurred many times, and that she confronted the defendant about it. Alison said that when she heard of the outcry by her daughter, [Z.H.], who described waking to David Wayne Massar touching [her] breasts, she believed her daughter due to her prior experience with David Wayne Massar.

At trial, defense counsel first elicited this evidence during Chappell's cross-examination:

> Q. Okay. So I want to now talk to you about the statement that you gave to the prosecutor. Do you remember meeting with the prosecutor about a week ago and disclosing some extra information on this case?
>
> A. I remember meeting with the prosecutor.
>
> Q. Okay. Do you remember telling the prosecutor that early in your marriage to Mr. Massar that you would awaken to him touching your breast and your sexual organ without your permission?
>
> A. Yes.

2

Q. And do you remember telling her that this occurred many times and that you confronted him about it?

A. Yes.

Q. And do you remember telling her that when you heard of the outcry made by your daughter, [Z.H.], who also described waking to David Wayne Massar touching her breast, that you believed your daughter, due to your prior experience with David Wayne Massar?

A. Yes.

Q. You told all this to the prosecutor on December 4, 2023. Does that sound right?

A. I guess if that's the date.

Counsel then asked her if she had reported the same information to anyone else involved in the case. Chappell replied, "I don't remember that because it's been a lot of trauma for many, many months." On redirect, the prosecutor asked Chappell to elaborate on Massar's behavior. She said, "It was within the first few years—you know, the first few years of being married." She would wake up to being touched. "And I thought it was odd. But I thought, well, you know, he's never been married before. You know, maybe it's—you know him getting—you know, maybe he's got something to figure out. I don't know. I was very embarrassed about it, to be honest." She said, "I got pretty ugly with him once. And it just stopped for—and then there wasn't anything else."

Besides hearing from Chappell, the jury heard from Z.H., Z.H.'s school counselor, Z.H.'s therapist, and a Sexual Assault Nurse Examiner supervisor. It also heard from investigating officers and saw the dash-cam recording of the short interview officers conducted with Massar at the family home. Massar cooperated and told officers that he would fall asleep in Z.H.'s bed after snuggling with her at her request; he denied that he touched Z.H. in a sexual manner. The jury also heard from Massar himself. He testified in his defense consistent with his statement to the

3

officers.  He told the jury he woke up that night around 1:00 a.m., when Z.H. woke up to go to the bathroom, and went to sleep in his own bed.  Chappell was still up in the living room.  When he came home from work a couple of days later, he was blindsided by the police coming to the house and confronting him with Z.H.'s allegation.  Massar emphatically denied ever touching Z.H. inappropriately but agreed he had likely touched Chappell while she was asleep, saying "I probably did that.  Yes.  But that was my wife."  "I would try to wake her up."  He agreed with defense counsel that he considered it foreplay.

At the jury-charge conference, both parties acknowledged that they had a chance to review the proposed jury charge; neither had any objections or requests for additional instructions.  The charge included an extraneous-offense limiting instruction.

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment.  That is, that the defendant touched his wife without her consent and that the defendant may have committed violence against his son, [Z.M].  The evidence regarding the defendant touching his wife was offered to show that this defendant had a particular plan.  The evidence regarding prior violence against the defendant's son was offered to show why [Z.H.] may not have reported the alleged acts immediately.  You are not to consider any of this evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act or acts.  Those of you who believe the defendant did the wrongful act or acts may consider it.
>
> Even if you do find that the defendant committed a wrongful act or acts, you may consider this evidence only for the limited purpose I have described.  You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense.  In other words, you should consider this evidence only for the specific, limited purpose I have described.  To consider this evidence for any other purpose would be improper.

The jury found Massar guilty, and the trial court sentenced Massar to eight years in prison on each count, to run concurrently.

**ANALYSIS**

***Jury-Charge Error—Charge as Comment on the Weight of the Evidence***

Massar argues that the trial court erred by giving the admissible-to-show-a particular-plan part of the unrequested limiting instruction because it was incomplete and therefore a comment on the weight of the evidence.

*Applicable Law and Standard of Review*

The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Under Article 36.14, the trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case"—one "not expressing any opinion as to the weight of the evidence." Tex. Code Crim. Proc. art. 36.14. "The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge." *Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011). Article 36.14 imposes no duty on a trial judge to instruct the jury sua sponte on unrequested defensive issues because an unrequested defensive issue is not the law "applicable to the case." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).

"However, if the trial judge does charge on a defensive issue (regardless of whether he does so sua sponte or upon a party's request), but fails to do so correctly, this is charge error subject to review under *Almanza* [*v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g.]." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). "If there was an objection, reversal is required if the accused suffered 'some harm' from the error." *Id*. "If no proper objection was made at trial, a reversal is required only if the error caused 'egregious harm.'" *Id*.

5

*Application*

Texas Rule of Evidence 404(b) permits the admission of evidence of extraneous crimes, wrongs, or acts for limited purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but prohibits its use to show character conformity. Tex. R. Evid. 404(b). Rule 105 provides that, "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." *Id*. R. 105(a). Thus, "[o]n request, the jury should be instructed that it can only consider extraneous misconduct evidence if (1) it believes beyond a reasonable doubt that the defendant committed such misconduct and (2) then only for the limited purpose for which it was admitted." *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022). A trial court is not obligated to give a limiting instruction sua sponte, that is, where one is not requested. *Pugh v. State*, 639 S.W.3d 72, 98 (Tex. Crim. App. 2022); *Delgado*, 235 S.W.3d at 251.

As Massar recognizes, appellate courts have held that a trial court does not err in sua sponte giving a jury an extraneous-offense limiting instruction. *See*, *e.g.*, *Yepez v. State*, 696 S.W.3d 1, 8-9 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (over objection); *Ferreira v. State*, 514 S.W.3d 297, 300–01 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (none requested). Some have relied on the pre-rules reasoning in *Fair v. State*, 465 S.W.2d 753 (Tex. Crim. App. 1971). There, the Court of Criminal Appeals rejected an argument that the trial court reversibly erred by including an extraneous-offense limiting instruction in the jury charge over the appellant's objection. *Id*. at 754. It determined that the included instruction, although not required, "was not harmful but beneficial to the appellant." *Id*. at 755.

6

Massar acknowledges that the trial court would not have erred had it included a full limiting instruction—one including the complete language of Texas Rule of Evidence 404(b)(2)—that the evidence may be admissible "as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). The Court of Criminal Appeals has already rejected the argument that a limiting instruction is an impermissible comment on the weight of the evidence.

> There are three specific circumstances under which a trial court may single out a particular item of evidence in the jury instruction without signaling to the jury an impermissible view of the weight (or lack thereof) of that evidence. First, the trial court may specifically instruct the jury when the law directs it to attach "a certain degree of weight," or only a particular or limited significance, to a specific category or item of evidence . . . . [One] example would be an instruction limiting the jury's consideration of a particular item of evidence to certain purposes, under Rule 105 of the Texas Rules of Evidence. "[T]he receipt of evidence for a limited purpose would be impossible were the judge forbidden to indicate to the jury which evidence was subject to such limitation."

*Bartlett v. State*, 270 S.W.3d 147, 151 (Tex. Crim. App. 2008).[1] But, argues Massar, by steering the jury away from "the broader spectrum of use of such evidence (to prove motive, opportunity, intent, etc.)," and focusing it on "only one ostensible purpose of the instruction, that being the evidence was offered to prove a 'plan' on Massar's part to commit the subject offense," the trial court commented on the weight of the evidence. We disagree.

In a pre-rules of evidence case, the Court of Criminal Appeals, facing a complaint about a limiting instruction, held that the limiting instruction given in that case, which explained

---

[1] *Bartlett* set out the second category as instructions on presumptions that can flow from predicate facts (such as Section 22.05 instructions allowing the jury to presume recklessness and danger if it finds a person knowingly points a firearm at or in the direction of another); it set out the third category as instructions on contingent admissibility (such as Article 38.23 instructions telling the jury not to consider certain evidence if the jurors find that the evidence was acquired illegally). *Bartlett v. State*, 270 S.W.3d 147, 151 (Tex. Crim. App. 2008).

the evidence was admissible to show a common plan or systematic course of action, "applied the law to the facts of the case to the extent it is possible to do so without commenting on the weight of the evidence." *Brooks v. State*, 580 S.W.2d 825, 833 (Tex. Crim. App. 1979). *Fair* itself rejected the appellate argument that the limiting instruction in that case—which instructed the jurors to only consider the extraneous offense for its relevance to intent—had been a comment on the weight of the evidence. *See* 465 S.W.2d at 754. We do not think that the promulgation of the rules of evidence changes anything; Rule 404(b) embodies the traditional Texas rule. *Daggett v. State*, 187 S.W.3d 444, 451 n.11 (Tex. Crim. App. 2005). Case law has borne out that the list of exceptions in Rule 404(b)(2) is neither mutually exclusive nor collectively exhaustive. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).

Here, the trial court admitted the extraneous evidence for one limited purpose and instructed the jury to consider it only for that purpose. Because an extraneous offense may be relevant to more than one issue, courts have rejected arguments that broader instructions are error. *See*, *e.g.*, *Jones v. State*, 119 S.W.3d 412, 427 (Tex. App.—Fort Worth 2003, no pet.) (where extraneous-offense evidence relevant to rebut defensive theory and to show opportunity, motive, and plan, trial court properly included all four purposes in jury instruction). But it does not follow that broader instructions are required where the trial court finds the evidence relevant only to a single purpose.

As in *Fair*, the limiting instruction, on its face, was beneficial. *Fair*, 465 S.W.2d at 755. Even if for some strategic reason, Massar did not want the instruction or wanted a different version of it, *see Delgado*, 235 S.W.3d at 250, he did not make that known to the trial court. Under these circumstances, we find the trial court did not err. We overrule Massar's claims about the limiting instruction.

8

## CONCLUSION

Having overruled Massar's argument that the trial court erred in giving the jury the limiting instruction that it did, we affirm the judgments of the trial court.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   November 20, 2025

Do Not Publish